SUN IL YOO, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 74–2716.

United States Court of Appeals, Ninth Circuit.

Feb. 2, 1976.

Rehearing and Rehearing En Banc Denied June 9, 1976.

---

Ruth Shamir, Los Angeles, Cal., and Bert Greenberg, Beverly Hills, Cal., for petitioner.

William D. Keller, U. S. Atty., Los Angeles, Cal., for respondent.

## OPINION

Before ELY and WRIGHT, Circuit Judges, and EAST,* District Judge.

ELY, Circuit Judge:

This is a Petition for Review which seeks to reverse the decision of the Board of Immigration Appeals denying petitioner's application for an adjustment of status and ordering him deported. For the reasons stated herein, we have concluded that the Petition is well taken.

Petitioner entered this country as a nonimmigrant student in June, 1968. In October, 1969, a visa petition was filed in his behalf by Mil-Fast, Inc., seeking his classification as a sixth-preference immigrant by virtue of his occupation as a machinist. Because that occupation was then listed by the Labor Department as pre-certified under Schedule C of 29 CFR § 60, Yoo could have

---

* Honorable William G. East, Senior United States District Judge, Eugene, Oregon, sitting by designation.

obtained visa preference without showing that he had a specific job offer. Under Immigration and Naturalization (INS) regulations,[1] any alien whose occupation and potential employment area were covered by Schedule C would be considered by the INS as having obtained the labor certification required by 8 U.S.C. § 1182(a)(14). Yoo qualified on both counts and thus was entitled to be certified by the INS once it found that he met the requirements.

In his application, Yoo stated that he had been employed by the Seoul Electric and Motors Manufacturing Company as a machinist. When the INS investigated this claim, its agents were told by a representative of the company, Mr. Sung Ho Kim, that Yoo had never been employed there. This information was included in an INS report dated February 27, 1970. On March 23, 1970, petitioner's counsel wrote the Service, reporting that the Service had received inaccurate information. Enclosed with the letter was a statement by Mr. Jong Hwan Kim, the former representative of the company, to the effect that Yoo had been employed by Seoul Electric during the periods stated in his application, a fact that was unknown to the original representative who had been contacted by American consular officials.

Nevertheless, ten months later, in January, 1971, the INS denied Yoo's application on the ground that he had given false information regarding his prior employment. Yoo appealed, and again called attention to the statement of Jong Hwan Kim. The Service then agreed to reconsider the visa application if the appeal were dropped.

In September, 1971, the INS again denied Yoo's application. The Service contended that because the Labor Department had withdrawn Schedule C in February, 1970,[2] Yoo could not obtain labor certification in the fall of 1971 without showing the existence of a job offer. He was unable to do so because Mil-Fast was no longer in existence. Yoo then filed an application pursuant to 8 U.S.C. § 1255[3] for adjustment of his status to that of a permanent resident. After a hearing, the Immigration Law Judge denied the application, finding Yoo was not eligible for an immigrant visa since he was unable to comply with the labor certification requirements of 8 U.S.C. § 1182(a)(14). Yoo appealed to the Board of Immigration Appeals, but the Board dismissed the appeal in March, 1974, on the grounds that Yoo had never received labor certification from the Secretary of Labor nor been the beneficiary of an approved sixth-preference visa petition. Yoo then filed his Petition in our court.

1. An alien whose occupation is currently listed in Schedule C—Precertification List will be considered as having obtained a certification under Section 212(a)(14) [8 U.S.C. § 1182(a)(14)] of the Act upon determination by the district director that the alien is qualified for and will be engaged in such occupation and that the alien will not reside in an area excluded from precertification by the Secretary of Labor.

8 CFR § 204.1(d)(2) (1970). The point of this regulation was presumably to eliminate the need for individualized Labor Department investigation of whether the employment of the alien would adversely affect American workers in cases wherein such determinations had been made for a series of occupational categories. The Service's job, therefore, was merely to check on the applicant's *bona fides* in terms of past qualifications and future plans to ensure that these qualifications and plans conformed to the statute and regulations. It was precisely this task that the Service needlessly and inexcusably delayed in petitioner's case.

2. It was later held that the suspension of Schedule C was illegal because the Labor Department had failed to publish notice of the suspension in the Federal Register. The court held the suspension was not effective until 30 days after its publication in February, 1971. *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2d Cir. 1972).

3. The status of an alien . . . who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved.

8 U.S.C. § 1255(a).

Yoo contends that he is eligible for relief under 8 U.S.C. § 1255 because he had a right to labor certification pursuant to Schedule C when Mil-Fast applied for visa preference in his behalf in October, 1969, and was prevented from obtaining it only because of the INS's unjustified delay in recognizing that Yoo had given correct information in his application. The INS argues that under our decision in *Guinto v. Rosenberg*, 446 F.2d 11 (9th Cir. 1971), the Service's procrastination does not estop the Government from denying Yoo the benefit of pre-certification in the consideration of his application for permanent residence. We indicated in that case that only "willful or oppressive" delay by the Service would entitle an alien to relief from changing economic conditions.

■ But the situation in *Guinto* was substantially different from that here. In *Guinto*, a delay of a few months in determining the petitioner's eligibility for third-preference visa status was occasioned by the Government's understandable need to obtain extensions of time in order to decide whether to proceed with an appeal. In this case, there was a one-year delay (from the original filing of Jong Hwan Kim's letter to the time of the decision by the INS to reconsider) for which the Service gave no explanation. As far as the record shows, the INS acquired no new data between the time of its receipt of the Kim statement and its decision to reconsider that affected Yoo's credibility. There is, in short, no apparent justification for the Service's unreasonable delay in recognizing the *bona fides* of Yoo's petition. Such conduct, it seems to us, fully merits the characterization of "oppressive".

Neither does *INS v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973), nor our recent decision in *Santiago v. INS*, 9 Cir., 526 F.2d 488, No. 73–2497 (Oct. 31, 1975) (en banc), support the Government's argument.[4] In both of those cases, it was held that the failure to inform an alien of his rights or the requirements of his immigration status was not such "affirmative misconduct" as to give rise to an estoppel against the Government. But in *Santiago*, we reiterated our belief "that estoppel is available . . . where the particular facts warrant it." (At p. 492). We have no doubt that this is such a case. While the failure of INS officials in *Santiago* to inform immigrants of the conditions of their entry into the United States may have been due to inadvertence or simple negligence resulting from the hectic atmosphere surrounding the processing and admitting of large numbers of aliens, no such plausible explanation can be made for the failure of the INS to perform its plain duty in this case. INS officials had much more than adequate time to make a reasoned determination of petitioner's eligibility for a sixth-preference visa; nevertheless, they have not even attempted to offer any explanation for having ignored significant, and apparently undeniable, evidence corroborating Yoo's application.

■ In our view, this is the kind of "affirmative misconduct" on the Government's part that cannot be employed to penalize an alien who appears to have always acted in good faith. Immigration agents may have no duty to inform aliens of matters which the aliens themselves have primary responsibility for knowing and could discover through the application of due diligence, but once an alien has gathered and supplied all relevant information and has fulfilled all requirements, INS officials are under a duty to accord to him within a reasonable time the status to which he is entitled by

---

4. Although our Brother Wright correctly notes that the petitioner in *INS v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973), had a right under the statute there involved to apply for naturalization, the opinion in *Hibi* expressly indicates that there may be such action or inaction on the part of the INS representatives as to inure, in some circumstances, to the benefit of an aggrieved alien. There are significant differences between the facts of *Hibi* and those presented here. One of the most important is that, in *Hibi*, there was more affirmative action that the petitioner could have taken so as to learn of his rights. Here, Yoo had actually done all that he could legally do to acquire the labor certificate to which he would have been lawfully entitled absent negligent or deliberate delay on the part of the INS.

law. By its maneuvers here, the INS has ensnared petitioner in a "Catch-22" predicament; the Service's conduct is analogous to the entrapment of a criminal defendant and, as such, cannot be countenanced.

■ As the Supreme Court has often emphasized, deportation is a drastic measure that may inflict "the equivalent of banishment or exile," *Barber v. Gonzales*, 347 U.S. 637, 642–43, 74 S.Ct. 822, 825, 98 L.Ed. 1009; *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948); *Delgadillo v. Carmichael*, 332 U.S. 388, 391, 68 S.Ct. 10, 92 L.Ed. 17 (1947), and "result in the loss 'of all that makes life worth living.'" *Bridges v. Wixon*, 326 U.S. 135, 147, 65 S.Ct. 1443, 1449, 89 L.Ed. 2103 (1945). When such serious injury may be caused by INS decisions, its officials must be held to the highest standards in the diligent performance of their duties. Here, their duty was clear. Unlike the immigrants in *Santiago*, who had no right to enter the United States when they did, Yoo had an absolute right to a labor certification under the INS's own regulation. INS officials, by their affirmative inaction, deprived petitioner of that right without justification. We have stated that "a person might sustain such a profound and unconscionable injury in reliance on [an official's] action as to require, in accordance with any sense of justice and fair play, that [he] not be allowed to inflict the injury." *Schuster v. CIR*, 312 F.2d 311, 317 (9th Cir. 1962). Justice and fair play can only be achieved in this case by holding, as we do, that the Government is estopped from denying petitioner the benefit of pre-certification in seeking an adjustment of his status under 8 U.S.C. § 1255.

The cause is remanded so that Yoo may be given an opportunity to reapply for adjustment of status under the same circumstances as if the Service had certified petitioner within a reasonable time after receiving the statement of Jong Hwan Kim on March 23, 1970.

Reversed and remanded.

EUGENE A. WRIGHT, Circuit Judge, dissenting:

I must respectfully dissent.

The majority recognizes that for the government to be estopped from denying petitioner the benefit of pre-certification in the consideration of his application for permanent residence, we must find "affirmative misconduct" on its part. I do not believe that an unexplained ten-month delay in processing constitutes the requisite showing under the test we recently approved in *Santiago v. INS*, 526 F.2d 488 (9th Cir. 1975) (en banc).

The substance of the misconduct condemned by the majority consists of a period from March 23, 1970 to January 8, 1971 during which petitioner's application was not acted upon.[1] Despite the absence of facts on the record relative to this period, the majority concludes that it represents "an unreasonable delay" without "apparent justification." While I too can only hypothesize on the reasons for the delay, I suggest it may not have been without justification.

Petitioner's original application stated that he had been employed as a machinist in Seoul, Korea. The result of an INS investigation contradicted this statement. Petitioner then submitted evidence to rebut the investigative report. His letter was dated March 23, 1970 but our copy of it indicates that it was not received until June 22, 1970. This accounts for three months of the delay.[2] At this point, the Service was

---

1. The majority's reference to a year's delay includes the period from January 8, 1971 when the application was first rejected until March 19, 1971 when the INS agreed to reconsider its decision. I do not understand the majority to say that the time consumed in deciding to reconsider was unreasonable. Had the INS denied petitioner's application at an earlier date within the reasonable time which the majority would have allowed, a two-month period prior to offering reconsideration would not have

been unreasonable. I do not, therefore, include this period in computing the delay which constitutes the alleged misconduct in this case.

2. I cannot explain this time lapse. Perhaps it was due to excessive workloads, perhaps to bureaucratic inefficiency. Clearly, it amounts to no more than the "simple negligence" which the majority found not to support estoppel in *Santiago*.

faced with a factual dispute to be resolved before a decision could be made on petitioner's application.

The majority, in fact, recognizes that the INS was entitled to "adequate time" to make a reasoned determination. Further investigation was undoubtedly warranted. The initial investigation of the alleged Korean employment required more than four months. After receiving contradictory reports on that matter, an investigation of equal or even longer duration would not have been unreasonable. While the record does not tell us whether, in fact, such an investigation was undertaken, I am reluctant to conclude, as does the majority, that the absence of evidence on this point requires or justifies an estoppel against the INS.

In conjunction with the possibility of a reasonable explanation for the time consumed in processing petitioner's application, I note that there was no motivation for delay on the part of the Service. Any inference of bad faith by it is unwarranted.

The Schedule C under which petitioner's application had been filed was withdrawn in February 1970 before any delay had occurred. Thus, the INS would have been justified in employing the reasoning which it finally adopted in September 1971 as early as February 1970. The INS need not have employed delay in processing petitioner's application in order to avoid granting approval if that were its purpose.[3]

The majority holds that a ten-month delay in processing petitioner's application constitutes "affirmative misconduct" so serious as to estop the government despite the availability of a plausible explanation for the delay and the absence of bad faith by the INS. I cannot reconcile such a holding with recent precedent.

In *Santiago, supra,* we said that for estoppel to operate, the acts or omissions of the INS had to be more blameworthy than

those in *INS v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973). The dissent of Justice Douglas in *Hibi* characterized the conduct of the government as a "deliberate—and successful—effort on the part of the agents of the Executive Branch to frustrate the congressional purpose and to deny substantive rights . . . ." *Id.* at 11, 94 S.Ct. at 23. In this court's earlier opinion in that case, we too noted that the government's conduct was "in derogation of [its] duty." *INS v. Hibi,* 475 F.2d 7, 11 (9th Cir. 1973). Despite this type of conduct on the part of the government, the Supreme Court refused to apply an estoppel against the government.

Weighing the blameworthiness as we must pursuant to *Santiago, supra,* I cannot find that the conduct in this case was of a more serious nature than in *Hibi.* Even if the reasons I have suggested for the delay are not accepted, the most that can be said is that petitioner's application was negligently handled. No allegation was made, nor is there any evidence, that the delay was deliberate as was the case in *Hibi.*

Moreover, while the majority can distinguish the facts of *Santiago* on the basis that there the petitioners were not entitled to entry into the United States at the time they sought to do so, *Hibi* cannot be distinguished. The majority states petitioner had an "absolute right" to a labor certification when he applied. But the petitioner in *Hibi* was denied an analogous, "absolute right," the opportunity to claim citizenship. Nor is the result of the government's conduct in *Hibi* less serious than in the present case. The loss of the opportunity to claim citizenship is at least as important as the opportunity to gain a labor certificate.

This court's recent en banc treatment of the applicability of estoppel in immigration cases cannot be ignored. Having recognized *INS v. Hibi, supra,* as a bench-mark against which all claims must be tested, we

---

3. The fact that the February 1970 suspension of the Schedule C was later found to be illegal and its effective date advanced by more than a year, *Lewis-Mota v. Secretary of Labor,* 469 F.2d 478 (2d Cir. 1972), does not alter this reasoning. That decision occurred after the delay in this case. It is unlikely that the INS anticipated the ruling of the Second Circuit and therefore delayed petitioner's application until after the suspension could legally take effect.

must do so. In the absence of conduct more blameworthy than there described, we are foreclosed from granting the relief sought by this petitioner.