SHON NING LEE, Petitioner,

v.

IMMIGRATION & NATURALIZATION
SERVICE, Respondent.

No. 77-2681.

United States Court of Appeals,
Ninth Circuit.

June 13, 1978.

Tin Chong Goo, Honolulu, Hawaii, for petitioner.

Philip Wilens, Chief, Dept. of Justice, Washington, D. C., for respondent.

Before KILKENNY and GOODWIN, Circuit Judges, and PALMIERI *, District Judge.

PER CURIAM:

Shon Ning Lee petitions this court to review the denial by the Board of Immigration Appeals of her motion to reopen her deportation proceedings. The BIA treated the motion as a new application for permanent resident status and denied it on the grounds that a visa was not available to Lee on its filing date.

The major issue is whether the motion to reopen is a new application or a renewal of a previously denied application. If it is a renewal, as Lee argues, a visa could be available to Lee. If the former, the BIA was correct in finding Lee ineligible for resident status. We have concluded that Lee's motion to reopen was a new application.

A second issue is whether the BIA should be estopped from holding that a visa is not available to Lee because the BIA "delayed" a decision on Lee's previous application for

* The Honorable Edmund L. Palmieri, United States District Judge for the Southern District of New York, sitting by designation.

nine months. Lee asserts that, had there been no delay, she could have filed the application presented in her motion to reopen during any of three occasions on which visas became available to her. We have concluded that, given the circumstances of this case, there are no facts upon which an estoppel theory can be based.

Lee is a citizen of the Republic of China (Taiwan). At her deportation hearing she admitted that she is deportable as a nonimmigrant who has remained in the United States longer than permitted.

Lee's present petition is concerned only with her quest for permanent resident status under 8 U.S.C. § 1255. The facts relevant to this quest are undisputed. The dates on which certain events occurred are significant.

On April 3, 1973, Lee filed with the District Director an application for permanent resident status. A previous application, not relevant here, had already been denied. In this application, Lee sought admission as a nonpreference immigrant who was exempted from the labor certification requirements of 8 U.S.C. § 1182(a)(14) on the ground that she was an alien investor within the purview of 8 C.F.R. § 212.8(b)(4). The District Director found that Lee was not entitled to the claimed exemption because she had not invested in and was not actively in the process of investing in a commercial or agricultural enterprise. 8 C.F.R. § 212.8(b)(4). He denied the application.

The Order to Show Cause followed the District Director's denial. At her deportation hearing, Lee renewed her application for permanent resident status. She testified that she had engaged brokers to find a suitable business, but that none of the businesses offered for her consideration was purchased. Lee indicated that her attorney had advised her not to commit her funds until she had actually achieved permanent resident status. The Immigration hearing officer denied the application, and Lee appealed to the BIA.

At oral argument before the BIA in December 1974, Lee's counsel stated that Lee owned no business at the time of argument and that no business relating to Lee was identifiable. Nine months after argument, in August 1975, the BIA affirmed the denial. During this nine-month period, visas for Chinese nonpreference immigrants apparently became available on three occasions.

### I. New Application

■ On February 25, 1976, the BIA received the motion to reopen in question here. The motion attempts to demonstrate once more Lee's entitlement to permanent resident status as an alien investor and shows that Lee had actually purchased a business in November, 1974, one month before the oral argument mentioned above. The BIA treated the motion as a new application for permanent resident status with a filing date of February 25, 1976. Under the terms of 8 U.S.C. § 1255, the BIA found that Lee was not eligible for permanent resident status because a visa was not available to her on this filing date.

At oral argument before the BIA in December, 1974, when the application of April 3, 1973 was considered, the question was whether Lee's shopping for an investment was sufficient to establish that she was an alien "actively in the process of investing" within the terms of 8 C.F.R. § 212.8(b)(4). Her motion to reopen, on the other hand, is based on her claim that because of the investment of November 1974 she is an alien who "has invested" within the terms of the same regulation. Thus, the motion to reopen raises a new fact and a new legal argument. The motion is a new application.

As the INS points out, if motions to reopen like Lee's can be unrealistically tied to previously denied applications, an alien can rely on the filing date of the denied application as an unchangeable visa priority date. Then, because the regulations impose no time limit on filing motions to reopen (see 8 C.F.R. §§ 3.2, 3.8, 103.5, and 242.22), this priority date can be kept alive by submitting motions that allege factual developments arising at any time. This technique, if approved, can provide a formula for the alien to ignore valid orders of deportation while waiting for factual developments to improve.

## II. *Estoppel*

In December 1974 the BIA heard oral argument on Lee's appeal from the Immigration Judge's decision. The BIA then issued its own decision in August 1975. Lee claims that, while the BIA decision was pending, nonpreference visas for Chinese citizens became available on three occasions. She now asserts that if the BIA had not taken so long to decide her case she could have filed a new application for permanent resident status at any of the times when visas became available. Her premise for this argument is that the Board was negligent in taking approximately nine months to decide her case.

Lee fails, however, to establish a connection between the nine-month "delay" and any conduct that Lee "might" have taken during this period. The BIA was never informed of Lee's significant investment of November 1974 until Lee filed her motion to reopen. (In fact, Lee knew of the investment one month before oral argument on the application of April 3, 1973.) Therefore, during the period of the alleged "delay" and beyond, the case remained in the posture in which Lee had put it. The BIA decided the case in the regular course of its business. It committed no act that would have prevented Lee from informing it of the investment of November 1974 or even filing a new application, based on the investment, during one of the claimed visa availability periods. Thus, there is no hint that the BIA might have been negligent, let alone that it had engaged in affirmative misconduct, *Immigration and Naturalization Service v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973), or that delay was willful or oppressive, *Guinto v. Rosenberg*, 446 F.2d 11 (9th Cir. 1971).

Lee cannot rely on *Sun Il Yoo v. Immigration & Naturalization Service*, 534 F.2d 1325 (9th Cir. 1976). In that case, the INS allowed the petitioner to file a new application for permanent resident status after the petitioner had cleared up certain of the INS' misapprehensions regarding his eligibility. Although it was certain that petitioner was eligible when he filed his new application, the INS delayed a decision on the application for one year. During this delay, new regulations made the petitioner ineligible again. This court estopped the INS from applying the new regulations simply because there was no justification for the prejudicial delay. The facts in this case, on the other hand, reveal no misapprehension at any time regarding the substance of the application for permanent resident status that was before the BIA. Further, during the pendency of Lee's application the INS committed no positive acts that might have prejudiced Lee's application or visa availability. Given these circumstances, the nine-month "delay" in this case cannot be seen as prejudicial *per se.* In short, there are no facts on which to base an estoppel theory or to raise an inference that the delay was unjust.

The decision of the Board of Immigration Appeals is

Affirmed.