**Jacinta Toral GALVEZ, Amelia Toral de Cortes, Enrique Cortes–Villalobos, Plaintiffs,**

v.

**Joe D. HOWERTON, District Director, Los Angeles District Office of the Immigration and Naturalization Service; Cyrus Vance, Secretary, United States Department of State; William A. Garner, Chief, Immigration Visa Control Office, Department of State; United States Department of Justice; United States Department of State, Defendants.**

**No. CV 79–4235 MRP.**

United States District Court,
C. D. California.

Aug. 20, 1980.

Mathew L. Millen, San Pedro, Cal., for plaintiffs.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

PFAELZER, District Judge.

Plaintiffs herein allege that officials of the Immigration and Naturalization Service (INS) have engaged in affirmative misconduct in failing to process their applications for adjustment of status to that of permanent resident aliens. They seek a court order compelling the defendants to issue them appropriate visa numbers.

On June 9, 1980, the parties' cross Motions for Summary Judgment came on for hearing. After considering the papers submitted and hearing oral argument, the Court concludes that the INS officials have engaged in affirmative misconduct in the improper rejection of plaintiffs' applications followed by an unreasonable delay in processing their applications. As a result, the Government is estopped from denying the

availability of appropriate visa numbers for plaintiffs Amelia Toral de Cortes ("A.T. Cortes") and Enrique Cortes–Villalobos ("E. Cortes") and the Secretary of State is ordered to issue these plaintiffs appropriate visas to be charged to the 1979 fiscal year visa allotments.

## I

Plaintiff Jacinta Toral Galvez ("Galvez") is a naturalized United States citizen residing in California, and plaintiffs A.T. Cortes and her husband, E. Cortes, are Mexican citizens currently residing in California. On June 28, 1979, Galvez filed an "I–130E" application with the INS in Los Angeles to have her sister, A.T. Cortes, classified as a Fifth Preference immigrant[1] from Mexico under 8 U.S.C. § 1153(a)(5).[2] On the same date, A.T. Cortes filed an "I–485H" application for adjustment of status to gain permanent resident status.[3] Concurrently with Galvez' I–130E petition, E. Cortes filed his I–485H application as the accompanying spouse of A.T. Cortes, thereby entitled to the same preference and priority date as A.T. Cortes.

The parties agree that A.T. Cortes and E. Cortes are entitled to Fifth Preference classification with a priority date of October 15, 1976. On that date, A.T. Cortes and E. Cortes had filed an application with the U.S. Consul in Mexico. By virtue of a savings clause[4] in the Immigration and Nationality Act Amendments of 1976, Pub.L. No. 94–571, § 4, 90 Stat. 2705 (amending 8 U.S.C. § 1101 et seq. (1970)), these plaintiffs are eligible for classification in a preference group; if their preference petitions are approved subsequent to the passage of the Amendments, they retain the priority date from their original applications, submitted before the Amendments took effect.

On September 5, 1979, the INS returned the I–130E and I–485H applications to A.T. Cortes with the explanation that she had failed to submit evidence that the priority date of October 15, 1976 related to a Fifth Preference visa petition. Defendants have admitted that the INS erred in rejecting the forms on this basis. As justification for this error, defendants maintain that INS personnel were not familiar with the savings clause of the 1976 Amendments, which permits the retention of pre–Amendment priority dates. As an additional reason for rejection of the I–130E and I–485H forms at this time, the INS indicated that an accompanying form relating to A.T. Cortes' personal background was incomplete.

On September 19, 1979, plaintiffs' attorney hand–delivered the forms which the INS had rejected two weeks earlier to the receiving INS examiner with a letter describing the operation of the savings clause;

---

1. "Fifth Preference" refers to a preference class in numerical order of priority for allocation of immigrant visas. Since quotas have been imposed on the number of immigrants permitted to enter the United States from various geographical regions, qualification as a member of a preference group is important in obtaining the earliest possible consideration of a visa application. *See* IA Gordon & Rosenfield, Immigration Law & Procedure § 3.7a (Rev.Ed.1980).

2. Title 8 U.S.C. § 1153(a)(5) provides as follows:

   (5) Visas shall next be made available, in a number not to exceed 24 per centum of the number specified in section 1151(a)(ii) of this title, plus any visas not required for the classes specified in paragraphs (1) through (4) of this subsection, to qualified immigrants who are the brothers or sisters of citizens of the United States.

3. The Visa Office Bulletin indicated that Fifth Preference Visas were immediately available to aliens with priority dates earlier than November 1, 1977. Therefore, A.T. Cortes and E. Cortes were entitled to file the I–485H applications, pursuant to 8 C.F.R. § 245.1(g) (1980).

4. The savings clause in these Amendments, Pub.L. 94–571, § 9(a) is codified as a note under 8 U.S.C. § 1153. It provides in pertinent part:

   (a) The amendments made by this Act shall not operate to affect the entitlement to immigrant status or the order of consideration for issuance of an immigrant visa of an alien entitled to a preference status, under section 203(a) of the Immigration and Nationality Act as in effect on the day before the effective date of this Act, on the basis of a petition filed with the Attorney General prior to such effective date.

at that time, he explained the effect of the law to the examiner. Nevertheless, the following day, the INS once again improperly rejected the applications due to a misunderstanding of the applicable law.

Plaintiff filed a complaint on November 2, 1979, in the nature of a mandamus to compel administrative action by the INS in processing the I–130 and I–485 forms. More than a month after the complaint was filed, on December 6, A.T. Cortes was granted a Fifth Preference classification with a priority date of October 15, 1976. Since the grant of the preference status occurred during fiscal year 1980,[5] the INS looked to the 1980 allocation of visas to natives of Mexico. But no Fifth Preference visa numbers had been allocated to natives of Mexico during fiscal year 1980. Therefore, INS did not continue to process plaintiffs' applications for permanent resident status.

At the end of fiscal year 1979, approximately 235 Fifth Preference visa numbers allotted to natives of Mexico remained unused. Thus, had the INS requested visa numbers from the State Department before the deadline for fiscal year 1979, which is September 10, visas would have been available to the plaintiffs. Consequently, their status could have been adjusted to that of permanent resident.

## II

■ The Court has jurisdiction to review this denial of an adjustment of status under 8 U.S.C. § 1329 and 28 U.S.C. § 1331. *Nasan v. Immigration & Naturalization Service*, 449 F.Supp. 244 (N.D.Ill.1978), *Stokes v. United States*, 393 F.Supp. 24 (S.D.N.Y. 1975).

■ Where there has been affirmative misconduct on the part of the INS, the United States may be estopped to deny the availability of visas to those otherwise eligible but for the government's acts. *See Immigration & Naturalization Service v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973); *see also Villena v. Immigration & Naturalization Service*, 622 F.2d 1352 (9th Cir. 1980) (en banc); *Santiago v. Immigration & Naturalization Service*, 526 F.2d 488, 492–93 (9th Cir. 1975) (en banc), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). The central inquiry here is the determination whether or not the conduct of the INS, including the failure of the INS officials to understand the applicable law, the improper rejection of plaintiffs' visa applications on two occasions, and the ensuing delay, constitute affirmative misconduct.

■ It is the duty of the agency to inform itself of the law which Congress has authorized it to enforce. The INS admits that its personnel were not familiar with the current statute applicable to plaintiffs' visa eligibility and thus erred in returning the plaintiffs' applications on the basis of a misinterpretation of the relevant law. This failure to act in accordance with law is an aspect of the agency's affirmative misconduct which the Court cannot overlook. Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (agency action to be set aside where "not in accordance with law").

■ Another aspect of the present misconduct relates to the agency's failure to fulfill a statutory duty. The INS has a statutory obligation to issue visas to qualified applicants to the full extent of the annual quota limits established by Congress.[6] The legislative history of the Immigration & Naturalization Act indicates that this duty has not been left to agency discretion, *see* S.Rep. No. 748, 89th Cong., 1st Sess. *reprinted in* [1965] U.S.Code Cong. &

---

5. The government's fiscal year now runs from October 1 to September 30.

6. This continuing statutory obligation to issue visa numbers is provided in the Immigration & Nationality Act, 8 U.S.C. § 1101 et seq., is not disputed here. In support of this proposition, plaintiff has submitted two exhibits which are copies of the INS' intradepartmental memoranda, reciting this statutory duty in the context of particular quotas.

Ad.News, pp. 3328, 3337–38, but is obligatory upon the agency.[7]

The INS does not deny the existence of this duty. The INS argues, however, that even if the plaintiffs' applications had been processed on the day on which they were originally received, June 28, 1979, they still would not have been granted a visa number from that year's allocation due to the time required by the INS to process the applications. Therefore, the INS concludes that plaintiffs were not prejudiced by the failure of the INS to process plaintiffs' forms and that the rejection of plaintiffs' forms did not result in a breach of statutory duty.

Before responding to this contention, it is necessary to consider certain aspects involved in processing these applications. In order to grant a visa from the 1979 allotment, the State Department must receive the formal request from the INS by its deadline for fiscal year 1979. Consequently, the INS would have been required to complete all necessary steps in the processing of the applications for change of status by September 10, 1979. According to the INS, they would have been unable to complete the processing in the 2½ months between June 28 and September 10, 1979.

At present, the Los Angeles office of the INS has a backlog of 6 months in scheduling the interviews which are required in order to complete the processing of petitions for adjustment of status. Thus, even if the INS office had accepted plaintiffs' applications in June of 1979, routine processing would not have been completed until the end of December, long after the September 10 deadline, and plaintiffs would have received no visa numbers from the 1979 allotment.

■ In evaluating the reasonableness of a 6–month delay in the allocation of visa numbers from a yearly quota, the Court may look to internal administrative guidelines relating to the procedure in question. *See generally Nicholas v. Immigration and Naturalization Service*, 590 F.2d 802 (9th Cir. 1979). The INS has issued an Operations Instruction ("O.I.") which provides that interviews required for the processing of petitions for adjustment of status be set within 60 days from the date of petition filing. O.I. 245.2a. In the view of this Court, while the O.I. does not have the force of law, it does provide a yardstick for judging the reasonableness of the period which the Los Angeles office of the INS required for processing plaintiffs' petitions.

■ In light of the statutory duty to fulfill yearly quotas and the INS' own standard directing that interviews be set within 60 days, the 6–month delay in the present case is unreasonable. The fact that the INS has chosen to assign only one employee to process petitions for adjustment of status does not justify the 6–month delay by INS in its processing of this category of applicants. Particularly where the agency's ignorance of the law has resulted in erroneous rejections of the applications, INS was under a special obligation to avoid lengthy delays.

■ Where, as here, a delay by INS is unreasonable and unjustified, it constitutes affirmative misconduct. *Villena v. Immigration & Naturalization Service*, 9 Cir., 622 F.2d 1352; *Miranda v. Immigration & Naturalization Service*, 638 F.2d 83 (9th Cir. 1980); *Yoo v. Immigration & Naturalization Service*, 534 F.2d 1325 (9th Cir. 1976). The Ninth Circuit has held that such affirmative misconduct may operate to estop the INS from denying plaintiffs the benefits or rights to which they would have otherwise been entitled. *Id.*

Relying on *Lee v. Immigration & Naturalization Service*, 576 F.2d 1380 (9th Cir. 1978), the government argues that INS should not be estopped from denying the availability of visas to the plaintiffs. In *Lee*, a 9–month "delay" by the INS in processing an alien's application was found not to constitute affirmative misconduct. The facts in *Lee*, however, are readily distinguishable from those at hand. The plaintiff in *Lee* did not establish any connection

**7.** *See also Contreras v. Bell*, No. 78–C–1166 (N.D.Ill., Order dated May 18, 1979).

between the delay by the INS and her failure to reapply while visas were still available. Due to the absence of a causal connection, the court found "no hint that the [government] had been negligent, let alone that it had engaged in affirmative misconduct." *Id.* at 1382.

The *Lee* court distinguished *Yoo, supra,* by characterizing the latter case as involving a plaintiff who was clearly eligible for permanent resident status when he filed his application but was denied this status through delay based on INS misapprehensions regarding his eligibility. In contrast to *Lee* where the INS had committed no positive acts which might have prejudiced the plaintiff's application or visa availability, the INS in *Yoo* had committed acts prejudicial to the plaintiff's application. In addition, the Government offered no justification for the prejudicial delay in *Yoo.*

In the present case, as in *Yoo,* the petitioners were clearly eligible for permanent resident status at the time they filed their applications. The INS was under a misapprehension regarding the law they were charged with administering. The agency committed positive acts in rejecting plaintiffs' applications and failing to assign personnel to interview the plaintiffs. Further, there is no dispute that the Government's delay is causally connected with the failure of plaintiffs to be awarded permanent resident status. As a result of an unjustified delay, the plaintiffs have been denied the status to which they are entitled by law.

The Court finds that the INS has engaged in affirmative misconduct in the processing of the petitions of A.T. and E. Cortes for adjustment of status and that defendants are estopped from denying them permanent resident status. The Court's disposition of this case makes it unnecessary to reach plaintiffs' additional arguments. Accordingly,

IT IS HEREBY ORDERED that plaintiffs' Motion for Summary Judgment is granted, and defendants' Motion for Summary Judgment is denied. The Court orders the defendant Secretary of State to issue A.T. Cortes and E. Cortes Fifth Preference visa numbers and to charge them to the 1979 visa allotments.