**Beatrice Theresa JAA,**
**Plaintiff-Appellee,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, et al.,**
**Defendants-Appellants.**

No. 85–1516.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1985.

Decided Jan. 3, 1986.

James M. Byrne, Don T. Yamamoto, San Francisco, Cal., for plaintiff-appellee.

Richard Olderman, U.S. Dept. of Justice, Appellate Staff, Civil Div., Washington, D.C., for defendants-appellants.

Before WRIGHT, KENNEDY and BEEZER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

This case concerns an alien's protracted and ultimately unsuccessful efforts to qualify as a permanent resident. The district court held that the Immigration and Naturalization Service (INS) was estopped by its own delay from denying permanent residency, and permanently enjoined the INS from deporting the alien. We reverse.

BACKGROUND

Beatrice Jaa, a Liberian citizen, entered the United States as a visitor in February 1978. In April, she married a fellow Liberian who was a permanent resident. She then requested permanent resident status, while her husband petitioned the INS to grant Jaa an immigrant visa.[1]

The INS interviewed Jaa in July 1978, but took no formal action until February 1983, when it denied her application for adjustment of status. This was 58 months after submission.

The INS offers two explanations for its delay. First, about a year after Jaa's interview, it learned that the Jaas were contemplating divorce. In fact, Mr. Jaa filed a petition for dissolution in July 1979 and an amended petition in December 1980.[2] It is not clear from the record exactly what effect a divorce would have had on Mrs. Jaa's application for adjustment of status.

Second, the INS pleads overwork. In 1980 and 1981, the service concentrated on applications filed by Iranians fearful of the new regime.

In June 1982, Mr. Jaa (possibly at the INS' suggestion) withdrew the petition he had filed on behalf of his wife. In February 1983, the INS denied Jaa's application for adjustment of status from visitor to permanent resident and instructed her to depart by March 4. She neither appealed nor departed.

Jaa was found deportable at a deportation hearing in January 1984 and ordered to leave voluntarily within six months. Again, she neither appealed nor departed. Instead, she applied for an extension of time to depart one week before the volun-

---

**1.** Section 245(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1255(a), conditions the grant of permanent resident status to an alien on the immediate availability of an immigrant visa. Mr. Jaa's petition, if approved, would have satisfied this condition.

**2.** The record indicates that the divorce was not yet final in November 1984.

tary departure period expired. This application was denied but no written denial was delivered.

In September 1984, the INS issued an order of deportation for October 16. On October 15, Jaa sought to stay the order, pointing out that she had never been given a written denial of her request for time extension. The INS refused to stay the order. Jaa obtained a temporary restraining order in district court, pending a hearing on her request for an injunction.

At the hearing, she argued: (1) she did not receive written notice that her application for time extension had been denied (Form I–210) before receiving notice of the deportation order (Form I–166), in violation of 8 C.F.R. § 244.2; (2) she did not receive proper 72 hours' notice of the deportation order, in violation of 8 C.F.R. § 243.3; and (3) the INS should be estopped from denying Jaa's permanent residency application.

The district court accepted her third argument and issued a permanent injunction on the ground of estoppel. The INS timely appealed.

DISCUSSION

I. *Did the District Court have Jurisdiction over Jaa's Claims?*

The government asserts that the district court had no jurisdiction over Jaa's complaint because she failed to exhaust her administrative remedies. It is undisputed that Jaa never appealed any of the adverse INS decisions to the Board of Immigration Appeals. This defect is not fatal to her present claim for injunctive relief.

■ Determinations made during a deportation hearing, including final deportation orders, are reviewable exclusively by the Court of Appeals. *See* 8 U.S.C. § 1105a; *Cheng Fan Kwok v. INS,* 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968). Other determinations, ancillary to an application for permanent residency, must be challenged first in district court. *See* 8 U.S.C. § 1329; *Cheng Fan Kwok,* 392 U.S. at 210, 88 S.Ct. at 1973. In particular, that court has jurisdiction to review a denial of status adjust-

ment. *Galvez v. Howerton,* 503 F.Supp. 35, 38 (C.D.Cal.1980).

The INS both denied Jaa a status adjustment and issued her a deportation order. She sought injunctive relief in the district court on three grounds. Apparently, the court was impressed only by the estoppel argument, and Jaa's appeal relies almost wholly on it. Her other two arguments were without merit.

Jaa argued that she did not receive an I–210 form, in violation of 8 C.F.R. § 244.2, and that the INS should be barred from deporting her. But there is no reason to believe that 8 C.F.R. § 244.2 supports a private cause of action yielding such relief. Jaa argued also that her deportation notice (Form I–166) became valid only when she received her I–210 form. This claim is unsupported by statute or regulation.

■ The estoppel claim attacked not the final deportation order, but the INS' refusal to adjust Jaa's status. Apparently, Jaa could not submit this refusal to the BIA for review. 8 C.F.R. § 245.2(a)(4). The district court had jurisdiction over the claim and we may consider its merits.

II. *Merits of the Estoppel Claim*

The parties agree on the principal facts. We review the court's conclusions of law *de novo.*

In this circuit, the traditional test for estoppel has four parts:

(1) The party to be estopped must know the facts;

(2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(3) The latter must be ignorant of the facts; and

(4) He must rely on the former's conduct to his injury.

*Johnson v. Williford,* 682 F.2d 868, 872 (9th Cir.1982); *United States v. Georgia-Pacific Co.,* 421 F.2d 92, 96 (9th Cir.1970).

■ A party asserting estoppel against the government must begin by demonstrat-

ing the traditional elements, but he must do more, for "the Government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51, ——, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984).

We have explained in two ways the special burden on a party seeking to estop the government. First, the government's actions must have amounted to "affirmative misconduct." *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir.1985); *Simon v. Califano*, 593 F.2d 121, 123 (9th Cir.1979) (per curiam); *Santiago v. INS*, 526 F.2d 488, 491–92 (9th Cir.1975) (en banc), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). Affirmative misconduct must be more than negligence. *Morgan*, at 545; *Simon*, 593 F.2d at 123. Mere unexplained delay does not show misconduct. *INS v. Miranda*, 459 U.S. 14, 18–19, 103 S.Ct. 281, 283–4, 74 L.Ed.2d 12 (1982).

■ Second, even affirmative misconduct will not estop the government unless "the government's wrongful conduct threatened to work a serious injustice and ... the public's interest would not be unduly damaged by the imposition of estoppel." *Worley v. Harris*, 666 F.2d 417, 421 (9th Cir.1982), (quoting *United States v. Lazy FC Ranch*, 481 F.2d 985, 989 (9th Cir.1973)); *see also Morgan*, 545; *Simon v. Califano*, 593 F.2d at 123.

Jaa would show affirmative misconduct in two distinct ways. Both fail, and the estoppel argument fails with them.

■ Her first argument was adopted by the trial court: the 58-month delay between her application for adjustment of status and the INS' denial amounts to affirmative misconduct.[3] She relies on *Villena v. INS*, 622 F.2d 1352 (9th Cir.1980), and *Sun Il Yoo v. INS*, 534 F.2d 1325 (9th Cir.1976).

This reliance is misplaced. Both cases inferred misconduct from mere unexplained delay, and to that extent have been overruled by *Miranda*. Otherwise, they are distinguishable. In *Villena*, the government was estopped by its own delay from faulting an applicant for lack of diligence. Here, the government is not criticizing Jaa for lack of diligence. In *Sun Il Yoo*, the majority evidently suspected the government of deliberate delay. 534 F.2d at 1330 (Wright, J., dissenting). Jaa suggests no evidence tending to show that the government's delay was deliberate.

There is no evidence that the government's delay in this case was anything but neglect. Neglect will not support estoppel. *See Green v. U.S. Department of Labor*, 775 F.2d 964, 970 (8th Cir.1985) (delay may constitute neglect but it does not rise to the level of affirmative misconduct required to estop the government).

Jaa's second argument accuses the government of deliberately pressuring Mr. Jaa to withdraw his application for Jaa's immigrant visa. This affirmative misconduct, she says, supports estoppel.

She offers no persuasive evidence that the government improperly pressured Mr. Jaa. Even assuming it did, estoppel is not shown on these facts.

First, while the government apparently failed to tell her why her husband withdrew his petition, it made no affirmative misrepresentations to her. She argues that the government's failure to disclose amounted to "definite misrepresentation," but she cites no authority to show that she was entitled to know more than she was told.

Second, Jaa does not show detrimental reliance. The only detriment she refers to is the "endurance test" of waiting from 1978 to 1983 for her residency request to be acted on. But nearly all of this delay

---

**3.** The 58-month figure is misleading. After Jaa's application, there was a three-month delay before her interview. Then there was a 12-month delay before the INS heard of her impending divorce. Then 35 months passed before Mr. Jaa withdrew his petition. Finally, the

INS took eight months to deny Jaa's request for adjustment of status. Only the 35-month delay exceeds the 18 months condoned in *Miranda*. It was during this period that the INS was distracted with Iranian petitions.

occurred *before* Mr. Jaa (for whatever reason) withdrew his supporting petition. Reliance cannot antedate the conduct relied upon.

Reading the facts in Jaa's favor, it appears that the INS first neglected her petition when she was qualified for residency and later acted to disqualify her. These facts do not support estoppel.[4]

The judgment of the district court is REVERSED.

---

**4.** Since we reverse the district court's finding of estoppel, we need not decide the propriety of the relief granted. It is remarkable, though, that a permanent injunction against deportation would apparently give Jaa privileges beyond those of all other permanent residents.

