**JOHN DOE I, et al., Plaintiffs,**

v.

**Edwin E. MEESE, III, Attorney General of the United States, Defendant.**

**Civ. A. No. H–88–398.**

United States District Court, S.D. Texas, Houston Division.

April 11, 1988.

Robert Rubin, Ignatius Bau, National Refugee Rights Project, San Francisco Lawyers' Committee for Urban Affairs, San Francisco, Cal., for plaintiffs.

Allen W. Housman, David V. Bernal, Richard L. Chanovitz, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, D.C., and Howard E. Rose, Special Asst. U.S. Atty., Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

This action was brought by a group of aliens from Central America who seek permission to work in the United States pursuant to 8 C.F.R. § 274a.12(c)(8) and 8 C.F.R. § 274a.13(d). Plaintiffs seek certification as a class action on behalf of all persons seeking political asylum who have been denied work permits. For the reasons stated below, the motion for class certification is DENIED. The motion for preliminary injunction is DENIED in part and GRANTED in part.

### I. Class certification.

Pursuant to Federal Rule of Civil Procedure 23(a), four prerequisites must be met before this Court can certify a class action. The four prerequisites are: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims of the class and; and (4) the representative parties will fairly and adequately protect the interest of the class. See Fed.R.Civ.P. 23(a). Since Plaintiffs have failed to show that joinder is impractical and that there are sufficient common questions of law and fact, the motion for class certification is DENIED.

#### A. Numerosity:

■ Merely alleging that a class is too numerous to make joinder practical is insufficient to satisfy the numerosity requirement. *Fleming v. Travenol*, 707 F.2d 829, 833 (5th Cir.1983). The Court must look to the specific facts of each case to determine not only the number of potential class members but whether joinder is necessary. *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).

■ In this case between 59 and 62 employment authorization requests from asylum work permit applications have been denied in the Houston and Harlingen Districts between June 1, 1987, and March 22, 1988. *See* Government's Response to Plaintiffs' Interrogatory No. 3. Over 1,000 applications for employment authorization have been granted to asylum applicants during the same time period. *Id.;* oral argument. The geographic scope of class certification, if recognized, would only encompass the Houston and Harlingen Districts since Plaintiffs have not identified any instances of improper denial of Employment Authorization Requests ("EAR") in any of the other INS Districts in Texas.

Furthermore, Plaintiffs have only been able to identify 3 to 15 persons whose EAR's have not been acted upon the INS within the period required under 8 C.F.R. § 274a.13(d). As far as the § 274a.13 issue is concerned, clearly class certification should be denied.

Likewise, the motion for class certification under the § 274a.12 issue must be denied. During oral argument on April 4, 1988, Plaintiffs claim that they now have been able to identify 32 additional persons who can serve as named Plaintiffs. Plaintiffs concede, however, that of the 10 named Plaintiffs, 7 have been granted employment authorizations. In short, since only 59 to 62 EAR's have been denied, of which 7 have subsequently been granted on rehearing, the Court concludes that the numerosity prerequisite has not been satisfied.

### B. *Commonality:*

■ The commonality and typicality requirements overlap to a certain extent and neither have been satisfied under the facts of this case. *See General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982).

Plaintiffs assert that they are not seeking substantive rulings on the merits of the individual work authorization request denials for any person other than the named Plaintiffs. They assert that Plaintiffs are challenging the common practices and procedures used by Defendant in making EAR adjudications. As discussed below, the crux of Plaintiffs' arguments is that INS is not properly determining whether EAR's are non-frivolous.

There is a wide gap between an individual's claim that he has been unfairly denied a work permit and the existence of a class of persons who have suffered the same injury. There must be a showing that the individual's claim will share common questions of law and fact with the class and that the individual's claim will be typical of the class claims. *See Falcon* at 157, 102 S.Ct. at 2370. For named Plaintiffs to bridge that gap they must prove much more than the validity of their own claim. They must prove that denial of a named Plaintiff's work permit application is typical of the denial of the class's applications. *Id.* at 158, 102 S.Ct. at 2371.

In determining whether an asylum application is non-frivolous, the INS examiners scrutinize the asylum application, other information in the applicant's file, and information that may come to their attention from other sources such as the Department of State, an immigration judge, or the Board of Immigration Appeals. Furthermore, following the "Norton Memorandum" the examiners look at the country of nationality to see if it is a democratic country that can protect its population, and, finally, the examiner may rely on a personal interview with the applicant. Since the examiner must look at each individual on a case-by-case basis, the Court concludes that the commonality and typicality requirements have not been satisfied. The Court notes that the class Plaintiffs seek to certify would not only include persons persecuted by guerrilla's in El Salvador and by the military in Guatemala, but would also include persons from Ireland or France seeking asylum who have been denied work permits. For these reasons, the motion for class certification must be DENIED.

The Court will now examine whether a preliminary injunction should be granted ordering work permits to be issued for the

named Plaintiffs who have not received employment authorization.

## II. *Preliminary Injunction.*

■ A movant must establish four prerequisites to be granted a preliminary injunction. *Allison v. Froehlke,* 470 F.2d 1123, 1126 (5th Cir.1972). The 4 prerequisites are: (1) a substantial likelihood that Plaintiff will prevail on the merits; (2) a substantial threat that Plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs a threaten harm an injunction may cause Defendant; and (4) granting the injunction will not disserve the public interest. *Middleton–Keirn v. Stone,* 655 F.2d 609, 610–11 (5th Cir.1981).

The Court concludes that movant has failed to establish a substantial likelihood of success on the merits and that granting the injunction will not harm the public interest. For those reasons, the motion for preliminary injunction on the § 274a.12 claim must be denied. However, Plaintiffs have shown a substantial likelihood of success on the merits and no great disservice to the public interest by granting a preliminary injunction on the § 274a.13 claim. Therefore the Court GRANTS Plaintiffs' motion for a preliminary injunction on the 274a.13 claim.

As a preliminary matter the Court notes that Plaintiffs have established that they are suffering irreparable harm. The declaration submitted with Plaintiffs' response to Defendant's opposition to the motion for a preliminary injunction indicates that named Plaintiffs have been denied employment because they did not have work authorization. Because of such denial Plaintiffs must live in abject poverty and may even be forced to return to their countries of origin. Furthermore, the Court concludes that injury to the Plaintiffs outweighs any injury that an injunction may cause INS.

A. The grant of an injunction will disserve the public interest.

8 C.F.R. § 274a.12(c)(8) states in pertinent part that any alien who has filed a non-frivolous application for asylum shall be granted employment authorization for a period not exceeding one year during the pendency of his asylum application. Plaintiffs argue that INS should be prohibited from finding an asylum application frivolous unless the agency determines that, assuming all facts in support of the claim to be true, the applicant has failed to state a claim to asylum. Plaintiffs' reply to Defendant's Opposition to Motion for Preliminary Injunction p. 18. Plaintiffs urge that "if the applicant states the basis for his or her fear and identifies the source of persecution or threatened persecution, the application shall be deemed 'non-frivolous.'" *Id.* Plaintiffs state that INS should not look at any determinations by the Department of State, immigration judges, or the Board of Immigration Appeals in determining whether an EAR is frivolous.

Granting Plaintiffs the relief they seek would disserve the public interests because under Plaintiffs' scheme INS would not be able to examine the circumstances of the applicant's home country or interview the applicant. Without these safeguards individuals could file bogus claims to receive temporary work authorization. The purpose of the Immigration Reform and Control Act of 1986 ("IRCA") is to control illegal immigration to the United States by imposing substantial penalties on employers who hire undocumented aliens. House Report No. 99–682 (Part I), 99th Congress, 2nd Session 45–46 (1986), U.S.Code Cong. & Admin.News 1986, p. 5649. If an alien obtains legal work authorization pursuant to 8 C.F.R. § 274a.12(c)(8) by stating a few magic words which cannot be examined or compared with extrinsic evidence, the public policy behind IRCA would be subverted. For this reason, the Court concludes that the granting of a preliminary injunction will disserve the public interest and would subvert Congressional intent underlying the Immigration Reform and Control Act of 1986.

B. Plaintiffs have failed to show a substantial likelihood of success on the merits.

8 C.F.R. § 274a.12(c)(8) states that employment authorization shall be granted to any alien who has filed a non-frivolous

application for asylum. The sole determination for INS to make is whether the application is frivolous. The parties concede that if the application is non-frivolous then INS *must* issue employment authorization.

To assist INS examiners, Richard E. Norton, Associate Commissioner of the Immigration and Naturalization Service, issued a memorandum dated July 9, 1987, setting forth guidelines for determining whether an application is frivolous. Under the "Norton Memorandum" an asylum EAR claim of an individual who is from a country where the government does not have a pattern of government sponsored persecution, does endeavor to prevent private persecution, and has a judicial system which is equitable and fair is presumed frivolous. Furthermore, an asylum claim in which the individual, after in-depth questioning, is unable to specify any of the 5 recognized grounds of persecution (race, religion, nationality, political opinion, or membership in a particular social group) may be presumed frivolous.

The gravamen of Plaintiffs' complaint is that the manner in which INS adjudicates an application for asylum interim work authorization is arbitrary and constitutes, in essence, an abuse of discretion. Plaintiffs also argue that pursuant to the guidelines set forth in the Norton Memorandum, refugees who have valid asylum claims are not receiving work authorizations. In particular Plaintiffs argue that John Doe I was denied work authorization because he has been persecuted by the *defacto* guerrilla government of El Salvador even though El Salvador is a country were the actual government does not have a pattern of government sponsored persecution, endeavors to prevent private persecution, and has an equitable and fair judicial system. Under the Norton guidelines, John Doe's application was denied.

■ Although the Court sympathizes with named Plaintiffs' plight, the Court must give substantial deference to INS decisions. *See Immigration and Naturalization Service v. Abudu,* —— U.S. ——, ——, 108 S.Ct. 904, 913, 99 L.Ed.2d 90

(1988). The power over aliens and control of immigration is of a political character and is subject only to narrow judicial review. *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101–2 n. 21, 96 S.Ct. 1895, 1904 n. 21, 48 L.Ed.2d 495 (1976).

The issue before the Court in determining whether Plaintiff has a substantial likelihood of prevailing on the merits of this action is whether the standard used by the Immigration and Naturalization Service to determine the meaning of "non-frivolous" is an abuse of discretion. *See Abudu, supra.* (Board of Immigration Appeals' decisions are reviewed for abuse of discretion). In other words, the question before the Court is whether the Norton Memorandum as applied by INS officials in Houston and Harlingen is a proper exercise of discretion.

The Court having considered arguments of counsel, the declarations and supplements, and the briefs of counsel concludes that the Norton Memorandum as applied in Houston and Harlingen is reasonable, and adjudication of § 274a.12(c)(8) claims following the Norton Memorandum does not constitute an abuse of discretion.

The Norton Memorandum relies upon *Matter of Cheung,* 16 I & N Decisions 244 (BIA 1977). In determining whether an individual has stated a non-frivolous claim the asylum officer may base his decision on the Country Reports on Human Rights Practices submitted yearly by the State Department to Congress. *Id.;* oral argument. These reports determine whether a country has a history of persecution, whether it has a government which does not have a pattern of persecution and endeavors to prevent private persecution, and whether it has a judicial system which is equitable and fair. *See* Phillips Deposition at 32; Mendolia Affidavit. The Court concludes that, application of the Norton Memorandum, *Matter of Cheung,* and the State Department Country Reports on Human Rights Practices by INS in determining whether an asylum application is frivolous for the purpose of granting work permits does not constitute an abuse of discretion.

Since the Court concludes that INS's procedure to adjudicate 8 C.F.R. § 274a.12(c)(8) EAR's does not constitute an abuse of discretion, Plaintiff is unable to show a substantial likelihood of success of the merits for that claim. For this reason and for the other reasons stated above, Plaintiff's motion for a preliminary injunction on the 12(c)(8) claim must be DENIED.

### C. *The § 274a.13 Claim:*

■ Unlike the § 274a.12 claim, a preliminary injunction on the § 274a.13 claim is proper. Plaintiffs have shown a substantial likelihood of success on the merits on the 8 C.F.R. § 274a.13(d) claim and have met the other three criteria.

8 C.F.R. § 274a.13(d) states that "failure to complete the adjudication [of an application for employment authorization] within 60 days will result in the grant of interim employment authorization for a period not to exceed 120 days." Defendant admits that John Doe II's request for work authorization was not acted upon in a timely manner. Defendant's opposition to Plaintiffs' Motion for Preliminary Injunction at p. 22. This apparently controverts INS Examiner Jesse Mendoila's Affidavit that no requests have been pending for more than 60 days. Furthermore, Plaintiff's counsel states that they have discovered twelve other cases in Houston and Harlingen that have been pending for more than sixty days and still remain unadjudicated. The regulations are clear. INS has a mandatory duty to grant interim employment authorization if INS fails to complete the adjudication within 60 days from the date of receipt of the application. *See Galvez v. Howerton,* 503 F.Supp. 35, 39 (C.D.Cal. 1980) (INS obligated to follow its own regulatory time frames when adjudicating applications). In light of INS's apparent violation of its duties under 8 C.F.R. § 274a.13(d), the Court concludes that Plaintiff has shown substantial likelihood of success on the merits under that claim.

Furthermore, Plaintiffs will suffer irreparable injury if a preliminary injunction is not granted. As stated above, severe economic hardship and possible forced return to their country of origin (and consequently possible persecution) will result if the injunction is not granted. The threatened injury to Plaintiff due to delay clearly outweighs any threatened harm that a delay in adjudicating claims will cause the INS. Finally, the granting of an injunction will not disserve the public interest. The public interest will be served·by an expeditious adjudication of employment work authorization permit claims by the INS.

For these reasons, the Court enters a preliminary injunction on the § 274a.13(d) claims.

### III. *Findings of Fact and Conclusions of Law.*

■ Plaintiffs argue that this Court should require INS to issue written decisions with findings of fact and conclusions of law in all asylum cases in which work authorization is denied. They claim that 8 C.F.R. § 274a.13(c) requires such findings.

The Court has examined § 274a.13(c) which states in pertinent part that, "if the application is denied, the applicant shall be notified in writing of the decision and the reasons for denial." The clear wording of the regulation indicates that explicit written findings of fact and conclusions of law are not required. In every case the EAR applicants have been notified in writing (by a letter) regarding the reasons for denial of an asylum work permit. Although some of the letters are apparently identical, if work authorization is denied for the same reasons in different cases the Court finds no harm by use of a form letter denial. In every case, the Court concludes that the denial of applications meets the criteria specified § 274a.13(c).

The request for a preliminary injunction requiring INS to issue written decisions with findings of fact and conclusions of law is DENIED since Plaintiffs have failed to show a substantial likelihood of success on the merits.

IT IS SO ORDERED.