# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BELEN CABACCANG; ISIDRO
CABACCANG,
              *Plaintiffs-Appellants,*

                    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES; DAVID
ROARK, Director of CIS Texas
Service Center; ALEJANDRO
MAYORKAS, Director of CIS; JANET
NAPOLITANO, Secretary of the
United States Department of
Homeland Security; ERIC H.
HOLDER JR., Attorney General of
the United States,
              *Defendants-Appellees.*

No. 09-56089

D.C. No.
2:07-cv-00574-
DDP-E

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
November 5, 2010—Pasadena, California

Filed December 29, 2010

Before: Mary M. Schroeder, Richard C. Tallman and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tallman

20731

## COUNSEL

Daniel P. Hanlon, Hanlon Law Group, Pasadena, California, for the plaintiffs-appellants.

Gisela A. Westwater, District Court Section, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for the defendants-appellees.

## OPINION

TALLMAN, Circuit Judge:

We must decide whether a district court may hear an alien's challenge to the government's denial of an application to adjust status when removal proceedings are simultaneously pending against the alien. We hold it may not. Because the alien plaintiffs here are currently in removal proceedings, we vacate the district court's order granting summary judgment to the defendants and remand with instructions to dismiss the action for lack of jurisdiction.

## I

Plaintiffs-Appellants Isidro and Belen Cabaccang, husband and wife and citizens of the Philippines, entered the United States with B-2 nonimmigrant tourist visas on July 17, 2004. They were admitted for a period of six months. Five months later, the Cabaccangs each filed a Form I-485 Application for Adjustment of Status. The Cabaccangs based their applications on a Form I-140 Petition for Alien Worker filed by Isidro's employer, Alhambra Hospital Medical Center, to classify him as a skilled worker in the position of registered nurse. Isidro sought status adjustment as the primary beneficiary of the hospital's I-140 petition, while Belen sought derivative adjustment as Isidro's dependent spouse. United States Citizenship and Immigration Services (USCIS) denied the Cabaccangs' applications because Isidro had not provided certain required documentation.

On January 16, 2005, during the pendency of their applications to adjust status, the Cabaccangs' six-month tourist visas expired. Almost thirteen months after the visas expired, the Cabaccangs filed a second set of applications for adjustment of status, which underlie this action. Similar to their first applications, the Cabaccangs based their second applications on an I-140 petition filed by Alhambra Hospital, this time on behalf of Belen, while Isidro sought to adjust his status derivatively. USCIS denied the Cabaccangs' second applications because the Cabaccangs had not provided "substantial evidence to show legal presence or maintenance of status."

The Cabaccangs filed motions to reconsider. USCIS responded that the Cabaccangs' lawful nonimmigrant status had expired on January 16, 2005, when their tourist visas ran out. *See* 8 C.F.R. §§ 214.1(c)(2), 248.1(b). Accordingly, USCIS reasoned, the Cabaccangs did not qualify for status adjustment under two separate subsections of 8 U.S.C. § 1255(k). First, the Cabaccangs did not have lawful status at the time of their second applications. *See* 8 U.S.C.

§ 1255(k)(1). Second, they had failed to continuously maintain lawful status for a period exceeding 180 days, beginning January 16, 2005. *See id.* § 1255(k)(2)(A). USCIS dismissed their motions to reconsider on January 3, 2007.

Just twenty-one days later, before the Department of Homeland Security (DHS) initiated removal proceedings, the Cabaccangs filed this action in Los Angeles district court seeking declaratory, injunctive, and mandamus relief. The district court granted the Cabaccangs' application for a temporary restraining order, directing USCIS to reopen and reconsider their applications for adjustment of status. USCIS complied, reopening the Cabaccangs' applications and issuing temporary work-authorization cards in the meantime. As a result, the district court dismissed the Cabaccangs' original complaint as no longer ripe.

USCIS again denied the Cabaccangs' reopened applications. The Notice of Decision stated, "The Service has determined that the original basis for the denial of your application is still valid and the denial is reaffirmed." Four days later, on May 22, 2008, the DHS initiated removal proceedings against Belen via a Notice to Appear. This notice turned out to be defective, forcing the DHS to issue a new notice in April 2009. On June 25, 2008, the DHS also initiated removal proceedings against Isidro via a Notice to Appear.

Shortly thereafter, the district court reopened this action as again ripe. The Cabaccangs filed an amended complaint on July 30, 2008, alleging that USCIS's denial of their second applications resulted from an arbitrary and capricious interpretation of the terms "lawful admission" and "lawful status" in § 1255(k), thereby violating the Administrative Procedure Act (APA).[1] *See* 5 U.S.C. § 706(2)(A). The parties filed cross-motions for summary judgment on whether USCIS's interpretation of § 1255(k) was arbitrary and capricious. The defen-

---

[1]The Cabaccangs do not challenge the denial of their first applications.

dants also filed a motion to dismiss, arguing the district court lacked subject matter jurisdiction. In relevant part, the defendants claimed the initiation of removal proceedings rendered USCIS's denial of status adjustment nonfinal and meant the Cabaccangs had not exhausted their administrative remedies, thus precluding review by the district court.

On June 15, 2009, the district court denied the motion to dismiss, finding it had jurisdiction but noting "mixed jurisprudence" on the issue. Meanwhile, the district court granted the defendants' cross-motion for summary judgment, concluding USCIS's interpretation of § 1255(k) was not arbitrary or capricious under the APA. The Cabaccangs now appeal that ruling.

## II

Before we may reach the Cabaccangs' substantive APA claim, we must determine whether the district court properly concluded it had jurisdiction over this action. Under the APA, agency action is subject to judicial review only when it is either: (1) made reviewable by statute; or (2) a "final" action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. No statute authorizes judicial review over denials of status adjustment, so the sole issue here is whether USCIS's denial of the Cabaccangs' applications was a "final" agency action for which there was no other adequate remedy.

**[1]** The imposition of an obligation or the fixing of a legal relationship is the indicium of finality in the administrative process. *Mount Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1990). Here, this indicium is lacking. During their pending removal proceedings, the Cabaccangs have the right to renew their applications to adjust status. *See* 8 C.F.R. §§ 245.2(a)(5)(ii), (c), 1245.2(a). They will have the opportunity to fully develop their arguments before the immigration judge (IJ). The IJ then has unfettered authority to modify or reverse USCIS's denial of the Cabaccangs' applica-

tions, regardless of USCIS's prior determination. *See* 8 C.F.R. §§ 1240.1(a)(1)(ii), 1245.2(a)(1)(i) (granting "exclusive juris- diction" over the issue to the IJ once removal proceedings are initiated). Thus, USCIS's denial of the Cabaccangs' applica- tions is not yet a final agency action because of the Cabac- cangs' right to renew their applications before the IJ.

Endorsing a similar view, we have previously held that a motion for reconsideration, an appeal to a superior agency authority, or an intra-agency appeal to an administrative law judge (ALJ) all render an agency decision nonfinal. *Acura of Bellevue v. Reich*, 90 F.3d 1403, 1407-08 (9th Cir. 1996). The Cabaccangs attempt to distinguish *Acura*, arguing their pend- ing removal proceedings are neither an appeal to a superior agency authority nor an intra-agency appeal to an ALJ. As the Cabaccangs correctly note, removal proceedings are handled by the Executive Office for Immigration Review, a Depart- ment of Justice agency, whereas their applications to adjust status were denied by USCIS, a DHS agency. The Cabac- cangs argue they have no review whatsoever within USCIS or the DHS itself,[2] rendering *Acura* inapposite.

**[2]** This argument is unconvincing. We see no reason why a hypothetical appeal to USCIS (or the DHS) would render nonfinal the denial of an application to adjust status, while the immediate pendency of removal proceedings would not. In *Acura*, we explained that an intra-agency appeal to an ALJ makes agency action nonfinal because the ALJ has "*de novo* review of the [agency]'s decision." *Id.* at 1408. Through this standard of review, the ALJ may "affirm, deny, reverse, or modify" the agency action in whole or in part. *Id.* at 1406 (internal quotation omitted). The situation here is no different. As described above, the IJ in the Cabaccangs' ongoing removal proceedings has *de novo* review over USCIS's denial

---

[2]The Cabaccangs are correct to this extent, as denials of status adjust- ment are not administratively reviewable outside of removal proceedings. 8 C.F.R. § 245.2(a)(5)(ii).

of their applications. *See* 8 C.F.R. §§ 1240.1(a)(1)(ii), 1245.2(a)(1)(i). It is immaterial that this further review takes place in a different agency within a different executive department. Like the situations described in *Acura*, the crucial consideration here is that the IJ may completely wipe away USCIS's prior decision. Consequently, USCIS's denial of their applications is not yet final, and the district court lacked jurisdiction under the APA. *See* 5 U.S.C. § 704.

**[3]** Similarly, the pendency of removal proceedings means the Cabaccangs have not exhausted their administrative remedies. *See Reiter v. Cooper*, 507 U.S. 258, 269 (1993). "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Id.* This rule allows agencies to develop a complete factual record and apply their expertise before judicial review occurs. *White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988). Only in "exceptional circumstances" is administrative exhaustion not required. *Id.* The Cabaccangs presently have the ability to reopen their applications to adjust status during their pending removal proceedings. Undoubtedly they will do so. Until they have exhausted this available administrative remedy, the district court cannot hear their claim.

We distinguish this case from our prior cases exercising jurisdiction over denials of status adjustment. *See Chan v. Reno*, 113 F.3d 1068 (9th Cir. 1997); *Tang v. Reno*, 77 F.3d 1194 (9th Cir. 1996); *Jaa v. INS*, 779 F.2d 569 (9th Cir. 1986). The district court relied on those cases in denying the defendants' motion to dismiss. Nevertheless, the court noted "mixed jurisprudence" on the issue and recognized that defendants' arguments against jurisdiction carried "persuasive force." Further, the court cautioned that *Chan*, *Tang*, and *Jaa* might be "distinguishable or inapplicable in a situation such as this one" but declined to further address that argument because defendants had not raised it.

Indeed, the cases are distinguishable. Unlike here, those cases did not involve removal proceedings that were pending during the federal action. In *Chan* and *Tang*, removal proceedings had never been initiated. *See Chan*, 113 F.3d at 1070; *Tang*, 77 F.3d at 1196. Further, the jurisdictional issue was never raised in *Tang*. *See* 77 F.3d at 1196. In *Jaa*, removal proceedings were already complete and a deportation order had issued. 779 F.2d at 570-71. As the Third Circuit has explained, this distinction is crucial. *See Pinho v. Gonzalez*, 432 F.3d 193, 201-02 (3d Cir. 2005). Without a pending removal proceeding, a denial of status adjustment is final because there is no appeal to a superior administrative authority. *Id.*; *see also supra* n.2. On the other hand, when removal proceedings are pending, further administrative relief is available. *Pinho*, 432 F.3d at 201-02. Accordingly, we join our sister circuits in holding that district courts lack jurisdiction to review denials of status adjustment if removal proceedings are simultaneously pending. *Howell v. INS*, 72 F.3d 288, 292-93 & n.5 (2d Cir. 1995); *Randall v. Meese*, 854 F.2d 472, 481-82 (D.C. Cir. 1988).

Finally, we reject the Cabaccangs' argument that jurisdiction vested with the filing of their original complaint in January 2007, notwithstanding the subsequent initiation of removal proceedings. This argument fails for at least two reasons. First, the operative complaint in this case is the Cabaccangs' first amended complaint filed on July 30, 2008. This filing occurred *after* both Cabaccangs were issued Notices to Appear, thereby initiating removal proceedings (although Belen's notice was later reissued to cure a defect). Second, although jurisdiction is usually determined from the filing of the relevant complaint, after-arising events can defeat jurisdiction by negating the ripeness of a claim. *See Hose v. INS*, 180 F.3d 992, 996 (9th Cir. 1999). Such is the case here. Regardless of whether the Cabaccangs' removal proceedings began before this action, the pendency of removal proceedings now means their claims are not ripe for judicial review. *See Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010)

(holding that claims are not ripe when the injury "may never occur" (internal quotation omitted)). To hold otherwise would allow plaintiffs to confer jurisdiction on the federal courts simply by racing to the courthouse before the government initiates removal proceedings.

Because the district court lacked jurisdiction, we do not reach the Cabaccangs' APA claim on the merits.

## III

**[4]** The district court lacked jurisdiction over this action. USCIS's denial of the Cabaccangs' applications to adjust status is nonfinal, and the Cabaccangs have not exhausted their administrative remedies. Thus, we vacate the district court's order of June 15, 2009, and remand with instructions to dismiss the action for lack of jurisdiction.

**VACATED and REMANDED with instructions.**