**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SILVA MAMIGONIAN,
*Petitioner-Appellant*,

v.

MICHAEL BIGGS; SUSAN
CURDA; TIMOTHY AITKEN;
JOHN MORTON; ALEJANDRO
AYORKAS; JANET A.
NAPOLITANO; ERIC H.
HOLDER, JR., Attorney
General,
*Respondents-Appellees*.

No. 11-15398

D.C. No.
2:11-cv-00404-
GEB-DAD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted
November 8, 2012—San Francisco, California

Filed March 14, 2013

Before: Ronald M. Gould and Milan D. Smith, Jr., Circuit
Judges, and Kevin Thomas Duffy, District Judge.[*]

Opinion by Judge Duffy

**SUMMARY**[**]

**Immigration**

The panel affirmed the district court's dismissal for lack
of jurisdiction of Silva Mamigonian's habeas corpus and
mandamus petition challenging the United States Citizenship
and Immigration Service's denial of her first adjustment of
status application, and seeking to order USCIS to approve her
then-pending second and third adjustment applications.

The panel held that the district court did not have
jurisdiction over Mamigonian's petition because: (1) the
REAL ID Act eliminated district court habeas jurisdiction
over orders of removal; (2) there had been no final agency
action by USCIS on the two applications pending at the time
she filed the petition; and (3) her mandamus claim was
mooted when the USCIS subsequently decided those two
applications. The panel further held that, because USCIS
since denied all of her pending applications, the district court
would now have jurisdiction under the Administrative

---

[*] The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Procedure Act to hear her claim. The panel held that district courts have jurisdiction to hear cases under the APA challenging final agency non-discretionary determinations respecting eligibility for the immigration benefits enumerated in 8 U.S.C. § 1252(a)(2)(B)(i), provided there is no pending removal proceeding in which the alien could seek those benefits.

The panel declined to convert Mamigonian's appeal into a petition to this court, and declined to dismiss it under the fugitive disentitlement doctrine because, although she failed to report for deportation, her whereabouts were known to her counsel, the Department of Homeland Security, and the court during the pendency of her case, and there was no indication that she was in hiding.

**COUNSEL**

Gittel Gordon (argued), Law Office of Gittel Gordon, La Jolla, California for Petitioner-Appellant.

Thomas J. Davis (argued) and Shay Dvoretzky, Jones Day, Washington, D.C., as amicus curiae for Petitioner-Appellant.

Audrey B. Hemesath (argued), Assistant United States Attorney, Sacramento, California, and Samuel P. Go, Senior Litigation Counsel, United States Department of Justice, Washington, D.C. for Respondents-Appellees.

**OPINION**

DUFFY, District Judge:

Silva Mamigonian, an Armenian native, filed a Petition for Writ of Habeas Corpus, Injunctive and Declaratory Relief, and Mandamus ("District Court Petition") against the U.S. Attorney General and officials of the Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), and U.S. Immigration and Customs Enforcement ("ICE") in the Eastern District of California ("District Court") seeking to enjoin her imminent removal, reverse USCIS's denial of her first adjustment-of-status application, and order USCIS to approve her then-pending second and third adjustment-of-status applications. After the District Court Petition was filed but before it was dismissed, USCIS denied Ms. Mamigonian's second and third adjustment-of-status applications. The following day, the District Court dismissed the case for lack of jurisdiction. Ms. Mamigonian now appeals the dismissal, and, in the alternative, seeks to convert her appeal into a petition challenging in this court USCIS's denial of her adjustment-of-status applications pursuant to 8 U.S.C. § 1252(a)(2)(D).

For the reasons discussed below, we affirm the District Court, and decline to convert Ms. Mamigonian's appeal into a petition to this court. We also hold that district courts have jurisdiction to hear cases challenging determinations made on nondiscretionary grounds respecting eligibility for the immigration benefits enumerated in 8 U.S.C. § 1252(a)(2)(B)(i), provided there are no pending removal proceedings in which an alien could apply for such benefits. *See Montero-Martinez v. Ashcroft*, 277 F.3d 1137 (9th Cir. 2002). The District Court did not have jurisdiction over Ms.

Mamigonian's petition because there had been no final agency action by USCIS on her pending adjustment-of-status applications at the time she filed her petition. However, because USCIS has since denied all of Ms. Mamigonian's adjustment-of-status applications, barring the discovery of new facts, the district court would now have jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, to hear Ms. Mamigonian's claim that her application was improperly denied.

## BACKGROUND

Ms. Mamigonian is a native and citizen of Armenia. She arrived in the United States on February 3, 2002, by way of the Los Angeles International Airport. At the airport, Ms. Mamigonian presented a U.S. passport that was not her own. Immigration Officer Anna White interviewed Ms. Mamigonian and took a sworn statement through an interpreter. Although Officer White ultimately deemed Ms. Mamigonian inadmissible, she paroled Ms. Mamigonian into the United States. On March 7, 2002, U.S. Immigration and Naturalization Services ("INS") (now reorganized under DHS into USCIS, ICE, and U.S. Customs and Border Patrol) initiated removal proceedings against Ms. Mamigonian.

On May 28, 2003, Ms. Mamigonian married a naturalized U.S. citizen. The couple now has two U.S. citizen children who were born on December 12, 2002, and March 10, 2006, respectively. On February 11, 2004, Ms. Mamigonian's husband filed a relative immigrant visa petition on her behalf, which was approved by USCIS on October 11, 2005. On October 13, 2005, Ms. Mamigonian filed an application with USCIS for an adjustment of status to that of a lawful permanent resident. On November 7, 2007, USCIS denied

the application and issued a written decision basing the denial on Ms. Mamigonian's alleged false claim to citizenship.

An immigration judge ("IJ") held removability hearings on December 16, 2008, and February 18, 2009. On June 26, 2009, finding credible Ms. Mamigonian's testimony that she did not intentionally present a passport that was not her own, the IJ dismissed the charges for falsely claiming citizenship and for fraud or material misrepresentation in order to procure a benefit under Section 212(a)(6)(C)(i) of the Immigration and Nationality Act ("INA"). The IJ noted that Ms. Mamigonian conceded removability "for being present in the United States without a valid visa," and ordered Ms. Mamigonian removed to Armenia for that reason. The IJ noted, however, that "USCIS retains jurisdiction over adjustment of status of an arriving alien."

On July 30, 2009, Ms. Mamigonian filed a second adjustment-of-status application with USCIS. On December 4, 2009, USCIS denied the application, stating that Ms. Mamigonian was ineligible to seek an adjustment of status because the IJ had ordered her removal.

Ms. Mamigonian filed a motion to reopen the removal proceedings on January 11, 2010, which the IJ denied on April 23, 2010. On August 6, 2010, ICE took Ms. Mamigonian into custody. She requested a stay of deportation, which DHS granted until January 2011. In the meantime, she was released. Ms. Mamigonian filed a second motion to reopen the removal proceedings, which the IJ again denied on November 29, 2010.

On October 5, 2010, Ms. Mamigonian filed a third application for an adjustment of status. On December 28,

2010, USCIS reopened and denied Ms. Mamigonian's second application. It also denied her third application. Ms. Mamigonian was not given notice of the denials nor the bases of denial, but USCIS issued a media statement on the same day stating that she was ineligible for relief due in part to her false claim to citizenship. USCIS reopened Ms. Mamigonian's third and second adjustment-of-status applications on January 10, 2011, and February 3, 2011, respectively.

On February 14, 2011, Ms. Mamigonian filed the District Court Petition that is the subject of this appeal. She sought to (i) enjoin her deportation through habeas relief, (ii) reverse USCIS's denial of her first adjustment-of-status application, and (iii) order USCIS to approve her two pending adjustment-of-status applications. The suit only lasted three days. The day after Ms. Mamigonian filed suit, USCIS denied Ms. Mamigonian's second and third adjustment-of-status applications based on the circumvention of normal visa processing and a preconceived intent to immigrate to the United States. These grounds for denial were in conflict with some of the IJ's earlier findings from the removal proceedings, which Ms. Mamigonian's counsel now argues provides a legal basis for challenging USCIS's determination. The following day, the District Court dismissed the case for lack of jurisdiction. This is the order that is the basis of this appeal.

On February 17, 2011, Ms. Mamigonian timely filed a notice of appeal and an emergency motion to stay removal with this court. This court denied Ms. Mamigonian's stay motion the following day. ICE informed Ms. Mamigonian that her deportation was scheduled for March 17, 2011. On March 12, 2011, Ms. Mamigonian filed a motion for

reconsideration with this court, which was denied on March 16, 2011.

The months following were filled with skirmishing between the parties, much of which is set forth in the margin.[1] Most of it has no impact on this appeal, other than a date was set for deportation and Ms. Mamigonian failed to show up when ordered.

The court heard oral argument on November 8, 2012. Because Ms. Mamigonian failed to appear for her deportation flight, and because she had not been in contact with the government in the interim, the government argued that the court should apply the fugitive disentitlement doctrine to dismiss this case. We ordered supplemental briefing on the issue following oral argument. The briefs indicate that Ms. Mamigonian has since been in contact with ICE and the government is electronically tracking her whereabouts.

We then ordered a second round of supplemental briefing relating to whether we could convert Ms. Mamigonian's

---

[1]  On March 17, 2011, Ms. Mamigonian appealed the second denial to reopen the removal proceedings to the Board of Immigration Appeals ("BIA") and asked for a stay of removal pending the appeal. The BIA denied Ms. Mamigonian's request for a stay, and she appealed to this court seeking review of the BIA's interim order. This court granted a temporary stay of removal pending further order. On April 21, 2011, the BIA denied Ms. Mamigonian's appeal. On July 20, 2011, this court dismissed the case seeking review of the interim order as moot. Ms. Mamigonian did not petition this court for review of the decision by the BIA dismissing her appeal.

ICE rescheduled her deportation for December 27, 2011. On December 22, 2011, Ms. Mamigonian renewed her emergency motion to stay removal. The next day, this court denied the emergency motion. Ms. Mamigonian failed to appear for her scheduled deportation flight.

appeal into a petition for review of USCIS's second and third adjustment-of-status denials pursuant to 8 U.S.C. § 1252(a)(2)(D). From the time that Ms. Mamigonian arrived in the United States to the present day, U.S. immigration laws have undergone a number of changes, including the passage of the REAL ID Act, Pub. L. No. 109–13, 119 Stat. 302 (2005). Among other things, the REAL ID Act consolidated federal court review of certain immigration agency decisions in the courts of appeals while stripping district courts of jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(D) ("Nothing . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals . . . ."). Thus, the second round of supplemental briefs addressed whether Ms. Mamigonian's suit was precluded in district court by the REAL ID Act, and if so, whether we could convert the present appeal into a petition challenging USCIS's adjustment-of-status denial on constitutional or legal grounds under section 1252(a)(2)(D).

## DISCUSSION

## I.  FUGITIVE DISENTITLEMENT DOCTRINE

We decline to dismiss this appeal on the basis of the fugitive disentitlement doctrine, which is a discretionary sanction courts can impose "to prevent appellate review for escapees from the criminal justice system." *Sun v. Mukasey*, 555 F.3d 802, 804 (9th Cir. 2009). In the immigration context, this court has denied appellate relief for "aliens who have fled custody and cannot be located" at the time their appeals are pending. *Id.*; *see also Zapon v. U.S. Dep't of Justice*, 53 F.3d 283, 284–85 (9th Cir. 1995). Two factors guide our discretion to dismiss an appeal based on the

fugitive disentitlement doctrine: "(1) the pragmatic concern with ensuring that the court's judgment will be enforceable against the appellant; and (2) the equitable notion that a person who flouts the authority of the court waives his entitlement to have his appeal considered." *Sun*, 555 F.3d at 804.

Ms. Mamigonian's failure to surrender for her deportation flight on December 27, 2011, does not alone disentitle her from making this appeal. *See Arrozal v. Immigration & Naturalization Serv.*, 159 F.3d 429, 432 (9th Cir. 1998) (declining to dismiss appeal for failure to report for deportation because petitioner was no longer a fugitive); *cf. Antonio-Martinez v. Immigration & Naturalization Serv.*, 317 F.3d 1089, 1091–93 (9th Cir. 2003) (denying petition for review where petitioner had been "out of touch" with counsel and INS "for well over two years"). Although the government did not know Ms. Mamigonian's whereabouts when the parties originally briefed this appeal, it is currently aware of her whereabouts and is now monitoring her electronically.

We have previously declined to dismiss an appeal pursuant to the fugitive disentitlement doctrine where, although the petitioner had failed to report for deportation, her whereabouts were known to her counsel, DHS, and the court during the pendency of her case. *See Sun*, 555 F.3d at 805. Since Ms. Mamigonian's whereabouts are known, and there is no indication that she is in hiding, we decline to dismiss her appeal on this basis.

## II.    THE DISTRICT COURT'S JURISDICTION

We do, however, affirm dismissal of the District Court Petition for lack of jurisdiction.  We review a district court's dismissal for lack of subject matter jurisdiction de novo. *Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 280 F.3d 901, 904 (9th Cir. 2002).  "The district court's factual findings relevant to its determination of subject matter jurisdiction are reviewed for clear error." *Id.*  We also review de novo a district court's dismissal for lack of habeas corpus jurisdiction.  *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1081 (9th Cir. 2010).  Applying these standards, we hold the District Court properly dismissed Ms. Mamigonian's case for lack of jurisdiction.

### A.  Habeas Jurisdiction Precluded by Statute

First, the REAL ID Act precludes aliens like Ms. Mamigonian from seeking habeas relief over final orders of removal in district courts.  *See* 8 U.S.C. §§ 1252(a)(5), 1252(b)(9) (2012); *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007).  Habeas relief for final orders of removal is only available through a petition to the court of appeals. § 1252(a)(5); *see Trinidad y Garcia v. Thomas*, 683 F.3d 952, 958 (9th Cir. 2012) (Thomas, J., concurring) (discussing how REAL ID Act stripped district courts of jurisdiction to review final orders of removal and consolidated review in the courts of appeals); *Morales-Izquierdo*, 600 F.3d at 1080 ("The REAL ID Act eliminated district court habeas corpus jurisdiction over orders of removal, vesting jurisdiction exclusively in the courts of appeals.") (citing *Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir. 2006)).  The District Court thus correctly concluded that it did not have

jurisdiction to adjudicate Ms. Mamigonian's habeas petition challenging her final order of removal.

### B. No Final Agency Action When Suit Was Filed

Second, because USCIS had not made final determinations on Ms. Mamigonian's reopened adjustment-of-status applications when she filed suit, the District Court did not have jurisdiction to review USCIS's actions. As a general matter, district courts are empowered to review agency action by the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* (2012), and have federal question jurisdiction over such claims pursuant to 28 U.S.C. § 1331 (2012). But for a court to hear a case like this pursuant to the APA, there must be "*final agency action* for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (2012) (emphasis added). Two conditions must be satisfied for agency action to be final for purposes of the APA: "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights and obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

Here, since USCIS had not yet made a determination on Ms. Mamigonian's pending adjustment-of-status applications when she filed suit in the District Court, there was no "final" agency action for subject matter jurisdiction.[2] "Subject matter jurisdiction must exist as of the time the action is

---

[2] Though USCIS denied her applications while her case was pending before the District Court, there is no evidence in the record that the District Court was apprised of this when it determined it had no jurisdiction.

commenced." *Morongo Band of Mission Indians v. Cal. St. Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). "If jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss." *Orff v. United States*, 358 F.3d 1137, 1149 (9th Cir. 2004) (internal quotation omitted).

## C. USCIS Decision Mooted Mandamus Action

Third, Ms. Mamigonian's mandamus request was mooted when, the day after she filed suit, USCIS finally rendered a decision on her adjustment-of-status applications. The mootness doctrine, embedded in Article III of the Constitution, requires that a case or controversy exist at all stages of federal court proceedings. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). Federal courts do not have constitutional authority to decide moot cases. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087 (9th Cir. 2011). "[I]f events subsequent to the filing of the case resolve the parties' dispute, [a court] must dismiss the case as moot." *Id.*

Thus, the District Court properly dismissed this case for lack of jurisdiction,[3] and we accordingly affirm. The REAL ID Act precludes district courts from exercising jurisdiction over habeas claims brought by aliens like Ms. Mamigonian; there was no final agency action on Ms. Mamigonian's adjustment-of-status applications when she filed suit; and her mandamus action was mooted by USCIS's subsequent decision.

---

[3] The default rule is that, where unspecified by a district court, dismissal for lack of jurisdiction is without prejudice. *See* Fed. R. Civ. P. 41(b) (2012); *Hargris v. Foster*, 312 F.3d 404, 412 (9th Cir. 2002) ("[O]rders that fail to specify whether dismissal is with or without prejudice are to be interpreted as dismissals without prejudice.").

## III.    CONVERTING   THE   APPEAL   INTO A PETITION

We decline to convert Ms. Mamigonian's appeal into a petition for review by this court pursuant to 8 U.S.C. § 1252(a)(2)(D) because, as explained below, district courts maintain jurisdiction to review challenges to adjustment-of-status denials that were decided on nondiscretionary grounds despite the jurisdiction-stripping provisions of the REAL ID Act. Litigants are thus not required to bring such claims by direct petition to the courts of appeals, so there is no need to perform the legal gymnastics Ms. Mamigonian requests. She instead may choose to bring a claim under the APA in district court that USCIS improperly denied her adjustment-of-status application on nondiscretionary grounds.

## IV.    DISTRICT COURT JURISDICTION OVER CHALLENGES TO NON-DISCRETIONARY ACTION

### A.    The REAL ID Act's Jurisdiction-Stripping Provisions

The 2005 REAL ID Act limited the scope of federal court review respecting certain immigration benefits determinations. One such jurisdiction-limiting provision provides that "regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [8 U.S.C.] § 1255." 8 U.S.C. § 1252(a)(2)(B)(i) (2012). Section 1255 addresses the adjustment of status of non-immigrants. Though the subtitle of section 1252 is "Judicial review of orders of removal," the body of the text reading "regardless of whether the judgment, decision, or action is made in removal proceedings" suggests

that "the jurisdictional limitations imposed by § 1252(a)(2)(B) also apply to review of agency decisions made outside of the removal context." *Lee v. U.S. Citizenship & Immigration Services*, 592 F.3d 612, 619 (4th Cir. 2010).

Upon initial examination, the language of the statute seems to wholly preclude judicial review of adjustment-of-status determinations made by USCIS outside of removal proceedings. But the operative jurisdiction-stripping language in 8 U.S.C. § 1252(a)(2)(B)(i)[4] was codified nearly ten years prior to the enactment of the REAL ID Act, as part of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104–208, 110 Stat. 3009 (1996), which amended the INA. Before Congress enacted the REAL ID Act, we interpreted that language in *Montero-Martinez v. Ashcroft*, 277 F.3d 1137 (9th Cir. 2002), and held that the jurisdiction-stripping provision only precludes review of discretionary determinations. *Id.* at 1142 (citing 8 U.S.C. § 1252(a)(2)(B)(i) (2001)). Specifically, the *Montero-Martinez* court stated:

> The meaning of "judgment" in § 1252(a)(2)(B)(i) is unclear because the statute does not define the term, and it could mean "any decision" . . ., or it could mean "a decision involving the exercise of discretion." We know, however, that in the INA as a whole, Congress *only* uses the word "judgment" to refer to the exercise of discretion or a discretionary determination when it is not being used to refer to a judgment of conviction. Moreover, when

---

[4] Again, that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [8 U.S.C.] § 1255."

§ 1252(a)(2)(B)(i) is read together with §§ 1252(a)(2)(A)(i) and (B)(ii) which directly precede and follow it in the statutory code, it seems clear that the "judgments" referred to in § 1252(a)(2)(B)(i) are "decisions . . . [within] the discretion of the Attorney General." A review of the INA as a whole further demonstrates that when Congress really wanted to preclude review of all decisions . . . regarding discretionary relief, it knew how to do so in unambiguous terms. Instead of eliminating review over "any appeal," "all decisions," or "any determination" regarding discretionary relief, however, Congress instead chose to eliminate review over "judgments" in § 1252(a)(2)(B)(i). On the basis of this evidence, we conclude that [§ 1252(a)(2)(B)(i)] eliminates jurisdiction only over decisions . . . that involve the exercise of discretion.

*Id.* at 1144.

*Montero-Martinez* came to us when we reviewed a BIA decision on a final order of removal. *Id.* at 1140. Even prior to the passage of the REAL ID Act, courts of appeals had exclusive jurisdiction to review final orders of removal (which they still maintain). *Compare* 8 U.S.C. § 1252(b)(2) (2001) *with* 8 U.S.C. § 1252(b)(2) (2012). Although *Montero-Martinez* dealt with a petitioner challenging a final order of removal in the court of appeals, the principle that 8 U.S.C. § 1252(a)(2)(B)(i) does not strip courts of jurisdiction to review nondiscretionary determinations applies equally to district courts in circumstances not involving review of final orders of removal. Thus, at least prior to the

enactment of the REAL ID Act, per *Montero-Martinez*, courts retained jurisdiction over nondiscretionary questions relating to eligibility for the immigration benefits enumerated in 1252(a)(2)(B)(i), including adjustment of status. *Montero-Martinez*, 277 F.3d at 1144.

## B. *Montero-Martinez*'s Viability Post-REAL ID Act

The 2005 REAL ID Act added a new provision to section 1252, which provides,

> Nothing . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (2012). We have not yet had occasion to determine what effect, if any, the REAL ID Act has on the continuing viability of our holding in *Montero-Martinez*.[5] However, two of our recent cases shed light on

---

[5] The majority of other courts of appeals have agreed with *Montero-Martinez*, holding that 8 U.S.C. § 1252(a)(2)(B)(i) does not strip courts of jurisdiction over nondiscretionary questions. *See Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005); *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 178 (3d Cir. 2003); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 216 (5th Cir. 2003); *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 423 (7th Cir. 2004); *Ortiz-Cornejo v. Gonzales*, 400 F.3d 610, 612 (8th Cir. 2005); *Gonzales-Oropeza v. U.S. Attorney General*, 321 F.3d 1331, 1332 (11th Cir. 2003). None of the cases listed above has been explicitly overruled post-REAL ID Act. *But see Schroeck v. Gonzales*, 429 F.3d 947, 950 n.2 (10th Cir. 2005) ("[T]he jurisdictional limitations in § 1252(a)(2)(B)(i) . . . have been abrogated in part by § 1252(a)(2)(D).").

the issue without resolving it: *Hassan v. Chertoff*, 543 F.3d 564 (9th Cir. 2008), *amended by* 593 F.3d 785 (9th Cir. 2010) (per curiam), and *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313 (9th Cir. 2010).

In *Hassan*, the court initially noted that "judicial review of an adjustment[-]of[-]status application—a decision governed by 8 U.S.C. § 1255—is expressly precluded by 8 U.S.C. § 1252(a)(2)(B)(i)." 593 F.3d at 788–89. However, the court then went on to hold that it lacked jurisdiction because the government denied petitioner's adjustment-of-status application as a matter of discretion by deeming petitioner a threat to national security. *Id.* at 789 ("Therefore, this Court lacks the authority to review Hassan's claim under 8 U.S.C. § 1252(a)(2)(B)(ii)."). Nothing in *Hassan* expressly overrules *Montero-Martinez*'s holding that subsection 1252(a)(2)(B)(i) applies only to discretionary determinations. *See id.*

And in *Cabaccang*, we addressed the issue of whether a district court may hear an alien's challenge to a USCIS adjustment-of-status denial when removal proceedings are simultaneously pending against the alien. 627 F.3d at 1314. There, we held that the district court did not have jurisdiction because there was no "final agency action" sufficient to confer jurisdiction under the APA since the IJ presiding over the removal proceedings could revisit the status adjustment. *Id.* at 1315–16. We did not, however, hold that there was no jurisdiction as a result of 8 U.S.C. § 1252(a)(2)(B)(i), nor did we even mention this jurisdiction-stripping provision. Instead, we cited with approval a number of circuit cases that predated the REAL ID Act and authorized district courts to review adjustment-of-status denials. *See id.* at 1317 (citing *Chan v. Reno*, 113 F.3d 1068 (9th Cir. 1997); *Tang v. Reno*,

77 F.3d 1194 (9th Cir. 1996); *Jaa v. INS*, 779 F.2d 569 (9th Cir. 1986)).

We did make clear in *Cabaccang*, though, that for purposes of the APA, "[w]ithout a pending removal proceeding, a denial of status adjustment is final because there is no appeal to a superior administrative authority." 627 F.3d at 1317 (citing *Pinho v. Gonzales*, 432 F.3d 193, 201–02 (3d Cir. 2005)); *but see Lee*, 592 F.3d at 620–21 (holding that the opportunity for an alien to subsequently challenge an adjustment of status during removal proceedings, and have that decision reviewed by the appropriate court of appeals, precludes district court review of the alien's USCIS adjustment-of-status determination under the APA).

Ms. Mamigonian is an arriving alien, and unlike admitted aliens and the petitioners in *Cabaccang*, *Pinho*, and *Lee*, she is precluded from submitting or renewing an application for adjustment of status before an IJ during removal proceedings. 8 C.F.R. § 1245.2(a)(1)(ii).[6]  Since the IJ would be without jurisdiction to adjudicate any claims relating to Ms. Mamigonian's adjustment of status, USCIS's prior denial of her adjustment of status would likewise fall outside the scope of our (or any other circuit court's) subsequent review of any removal order.  Therefore, because "denials of status adjustment are not administratively reviewable outside of removal proceedings," *Cabaccang*, 627 F.3d at 1316 n.2, and because such review would be unavailable to Ms. Mamigonian even if her removal proceedings were to be reopened, there is no question that USCIS's denial of Ms.

---

[6] This provision of the regulations provide a very specific exception for certain arriving aliens who have, among other requirements, "departed from and returned to the United States pursuant to the terms of a grant of advance parole."  8 C.F.R. § 1245.2(a)(1)(ii).  There is no evidence in the record to suggest that the exception applies to Ms. Mamigonian.

Mamigonian's adjustment-of-status applications is "final agency action" for purposes of the APA.

Today we therefore affirm *Montero-Martinez* as good law, and hold that district courts have jurisdiction to hear cases challenging final agency determinations respecting eligibility for the immigration benefits enumerated in 8 U.S.C. § 1252(a)(2)(B)(i) made on nondiscretionary grounds, provided there is no pending removal proceeding in which an alien could apply for such benefits.

The basis of our holding is that the REAL ID Act does not evince Congress's intent to abrogate *Montero-Martinez* or the numerous similar cases from sister courts of appeals. In interpreting the statute, we look, as we must, to the text of the statute. *United States v. Krstic*, 558 F.3d 1010, 1013 (9th Cir. 2009).

First, the REAL ID Act did not alter the operative jurisdiction-stripping provision contained in 8 U.S.C. § 1252(a)(2)(B). Presumably, if Congress wanted to abrogate *Montero-Martinez* and the numerous similar cases from the various courts of appeals, it would have done so explicitly by changing the language of the statute—specifically, by replacing the word "judgment." § 1252(a)(2)(B)(i); *see Montero-Martinez*, 277 F.3d at 1144 ("We know, however, that in the INA as a whole, Congress *only* uses the word 'judgment' to refer to the exercise of discretion or a discretionary determination when it is not being used to refer to a judgment of conviction."). Additionally, the relevant section title remained "Denials of *discretionary* relief." § 1252(a)(2)(B) (emphasis added). That the section title remained unchanged as part of the REAL ID Act further indicates that the new provisions were not intended to strip courts of review of nondiscretionary determinations.

Another indication that Congress did not intend to abrogate *Montero-Martinez* is that our interpretation of the statute does not render 8 U.S.C. § 1252(a)(2)(D) redundant. Section 1252(a)(2)(D), which vests courts of appeals with the exclusive power to hear petitions making constitutional or legal claims, is found in a section of the statute that only empowers courts of appeals to hear petitions challenging *orders of removal*. *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ."); *see also Trinidad y Garcia*, 683 F.3d at 956 (en banc) (per curiam) (construing § 1252(a)(4) as only applying to judicial orders of removal); *Singh*, 499 F.3d at 978 ("[B]oth §§ 1252(a)(5) and 1252(b)(9) apply only to those claims seeking judicial review of orders of removal."). In comparison, there is no such authorization in the statute for a petition to review a denied adjustment-of-status application by USCIS. Thus, § 1252(a)(2)(D) authorizes courts of appeals to conduct review of legal or constitutional claims respecting final orders of removal via petition (and, indeed, makes such a petition the only avenue of review for such cases), while § 1252(a)(2)(B)(i) permits courts to conduct review of nondiscretionary determinations in other enumerated situations, such as adjustment-of-status denials.

Given these considerations, it is evident that Congress did not intend the 2005 addition of § 1252(a)(2)(D) as part of the REAL ID Act to abrogate *Montero-Martinez* and similar cases. We therefore conclude that district courts maintain jurisdiction to hear cases under the APA challenging final agency determinations respecting eligibility for the immigration benefits enumerated in § 1252(a)(2)(B)(i) made on nondiscretionary grounds when there are no pending

removal proceedings at which the alien could seek those
benefits.

## CONCLUSION

We affirm the dismissal of Ms. Mamigonian's District
Court Petition for lack of jurisdiction. The District Court's
dismissal was, by default, without prejudice. Accordingly,
barring the discovery of new facts, the District Court now has
jurisdiction to hear Ms. Mamigonian's claim that USCIS
improperly denied her adjustment-of-status application on
nondiscretionary grounds. Given the amount of resources
that have already been expended on this case by the federal
courts, we assume that the government will delay further
removal efforts until Ms. Mamigonian has an opportunity to
seek relief from the District Court on the basis indicated.

**AFFIRMED.**