State of ALASKA, DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Cominco Alaska, Inc., an Alaska Corporation, Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Christie Whitman,* its Administrator, and Chuck Clarke, Regional Administrator, Region 10, of the United States Environmental Protection Agency, Respondents.

State of Alaska, Department of Environmental Conservation, Cominco Alaska, Inc., an Alaska Corporation, Petitioner,

v.

United States Environmental Protection Agency, Christie Whitman, its Administrator, and Chuck Clarke, Regional Administrator, Region 10, of the United States Environmental Protection Agency, Respondents.

Nos. 00–70166, 00–70301, 00–70169, 00–70175.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001

Filed March 27, 2001

Cameron M. Leonard, Assistant Attorney General, State of Alaska, Fairbanks,

---

* Pursuant to Fed.R.App.P. 43(c), Christie Whitman is automatically substituted as a party respondent for Carol Browner.

Alaska; Robert T. Connery and Marcy G. Glenn, Holland & Hart LLP, Denver, Colorado, for the petitioner.

Andrew J. Doyle, United States Department of Justice, Environmental Defense Section, Washington, D.C., for the respondent.

Before: REINHARDT, WARDLAW and GOULD, Circuit Judges.

**ORDER**

The Alaska Department of Environmental Conservation ("ADEC") and Cominco Alaska, Inc. ("Cominco") petition this Court for review of three enforcement orders (the "Orders") entered by the United States Environmental Protection Agency ("EPA"), which effectively invalidated an air quality construction permit issued by ADEC for the construction of a power generator at Cominco's Alaskan mining facility located about 100 miles above the Arctic Circle. Petitioners challenge the EPA's authority to invalidate the permit under federal and state law. The EPA asserts that it has the authority to regulate such construction under the Clean Air Act ("CAA" or the "Act") and further claims that this Court lacks subject matter jurisdiction to consider ADEC's and Cominco's petitions because the Orders are not "final agency action" subject to review in the United States Courts of Appeal.

We first consider the question of our jurisdiction to review the Orders. The parties agree that we have jurisdiction, if at all, pursuant to section 307(b)(1) of the CAA, 42 U.S.C. § 7607(b)(1), which gives the Court jurisdiction over "any ... final action taken, by the Administrator." The EPA argues that none of the Orders constitutes final agency action and thus none is reviewable.

Each of the Orders is predicated on the EPA's position that the Best Available Control Technology ("BACT") for the proposed new Wartsila generator MG–17 at Cominco's Red Dog Mine facility is Selective Catalytic Reduction as opposed to Low NOx emission reduction, a less costly technology proposed by Cominco and approved by ADEC. In its "Finding of Noncompliance and Order" dated December 10, 1999, the EPA found that the Low NOx emission control for MG–17 does not comply with the CAA or the Alaska State Implementation Plan ("SIP") for the CAA. Pursuant to 42 U.S.C. §§ 7413(a)(5) and 7477, the EPA ordered ADEC to withhold issuance of its proposed Prevention of Significant Deterioration ("PSD") permit for Cominco. Concluding that Low NOx was the appropriate BACT for the MG–17 generator, ADEC, shortly after receiving the December 10, 1999 Order, issued the final PSD permit. In a second order directed to Cominco dated February 8, 2000, finding it "necessary to prevent any further construction or modification at the Red Dog mine facility," the EPA prohibited Cominco from commencing any and all construction or modification activities at the Red Dog Mine facility associated with the Wartsila generator MG–17. The EPA's third order, dated March 7, 2000, modified the February 8, 2000 Order to accommodate the unique weather-related construction limitations present at the Red Dog Mine site and allowed certain preliminary summer construction activities. On April 25, 2000, the EPA withdrew its December 10, 1999 Order directed to ADEC, in light of ADEC's issuance of the construction permit after it received the order, noting that "the Order does not impose any continuing prohibitions or obligations to ADEC." In an accompanying letter, however, the EPA Deputy Regional Administrator stated:

> EPA still believes that the final PSD permit issued to Cominco is not in compliance with the Clean Air Act or the Alaska SIP. Region 10 is withdrawing only the Order portion of the December

10, 1999 document. Thus, the December 10, 1999 and February 8, 2000 Findings under Section [7413(a)(5)] remain unchanged, as does the March 7, 2000 Order issued to Cominco.

ADEC and Cominco petitioned for review of the Orders. Respondents, the EPA, Christie Whitman, and Chuck Clarke, Regional Administrator, Region 10, move to dismiss the petitions for lack of subject matter jurisdiction. The EPA asserts that the Administrative Orders issued to Cominco and ADEC do not constitute the "final action of the Administrator." In *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), recently reaffirmed in *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001), the Supreme Court explained that two conditions must be satisfied in order for agency action to be "final" for purposes of appellate review: the action must mark the "consummation" of the agency's decision-making process, and it must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78, 117 S.Ct. 1154 (citation and quotations omitted).

Like the Supreme Court in *Bennett* and *American Trucking*, we have little trouble concluding, especially in light of the representations as to the EPA's position made in oral argument by its counsel, that both *Bennett* conditions are met here. The EPA argues that the Orders are not a "final action," although the findings in the Orders are its "last word" on its position as to Selective Catalytic Reduction as BACT for MG–17 and Cominco is in legal jeopardy if it fails to comply with the Orders. The EPA contends that because it has not actually commenced an enforcement action, the Orders are not subject to review. There is, however, no question that the EPA asserted its final position on the factual circumstances upon which the Orders are predicated: It is EPA's position that if Cominco builds the MG–17

generator using Low NOx it would be in violation of the Act, the Alaskan SIP, and its Orders. The EPA's position is unalterable; according to counsel, it would change only if the circumstances surrounding the construction of MG–17 change.

The "rights or obligations" of the parties have been determined by these Orders. As paragraph No. 49 of the Findings of Fact in the February 8 Order states, the EPA found it "necessary" to issue the Order to "prevent any further construction or modification at the Red Dog mine facility." The EPA is right: The effect of the February 8 Order is to halt construction at Cominco's Red Dog Mine facility at a considerable cost of both time and money to Cominco.

Moreover, "legal consequences will flow," if Cominco chooses to disregard the Order and go forward with construction. As the EPA wrote in its Motion to Dismiss the Petition for Lack of Subject Matter Jurisdiction, "EPA could ask, and the district court could assess, penalties both for Cominco's alleged violation of the Act's PSD requirements and for any alleged violation of the order." At argument EPA counsel explained that the language "could" referred only to its decision to seek enforcement of its Orders and a district court's decision to enforce them. Thus the "could" language did not refer to a tentative conclusion as to the merits by the EPA, or to any ongoing EPA proceedings in that regard; it referred simply to whether the EPA would commence judicial proceedings to remedy what it views irretrievably as a violation of the Act. Under EPA's construction of its Orders, if it decides to institute such proceedings, Cominco and its employees would be subject to criminal and civil penalties for the violation of its Orders, as well as for the violation of the CAA.

Finally, our review will not benefit from further factual development of the record, as the principal issue before us is a legal question—whether it is the state, through

ADEC, or the EPA which bears the ultimate responsibility and authority to decide what emissions reductions will be required from which sources, *see* 42 U.S.C. §§ 7410(a), 7411, and whether the EPA acted in an arbitrary and capricious manner in issuing the Orders based on the record before it at the time it made its decision that the use of Low NOx on MG–17 would violate the Act and the PSD provisions of the SIP.

Having determined that the Orders are final and that we have jurisdiction, we do not consider the merits at this time because in order to do so we require, as explained below, the submission of an appropriate administrative record as well as further briefing. Also, because the EPA argued to this Court that the Orders were not "final" and that it had not yet determined whether to seek enforcement in the district court, it seems appropriate to provide the Agency with a fair opportunity either to commence such an enforcement proceeding, as contemplated by 42 U.S.C. § 7413(b), or to withdraw the Orders, before we proceed further with the petition for review. Thus, we express no view as to (a) whether the EPA has the authority under the CAA to invalidate the ADEC permit, or (b) if so, whether the EPA acted arbitrarily and capriciously in issuing the Orders. Accordingly, we order as follows:

Within 60 days of this order, the EPA may either (1) submit a complete administrative record which will allow this Court to review the justifications for the EPA's decisions to issue the Orders before us; (2) withdraw the Orders that are the subjects of these petitions; or (3) file an enforcement action, pursuant to 42 U.S.C. § 7413(b), in the appropriate United States District Court.[1]

With respect to the first option, the record we would be called upon to review, should we decide that the EPA has the authority to overrule ADEC, is that upon

which the EPA relied in its determination that Selective Catalytic Reduction, and not Low NOx, is the BACT for the MG–17. *See* 5 U.S.C. § 706; *Ober v. EPA,* 84 F.3d 304, 313–15 (9th Cir.1996); *see also Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."); *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 597, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980) (requiring a "meaningful record to review," which "fully comports with the traditional role of appellate courts in reviewing agency decisions that are based on development of factual issues by means of an administrative record"). To the extent necessary to provide a full and complete administrative record of the basis for the agency's final decision and the Orders, the EPA must produce not only documentary evidence but also affidavits of the Administrator or her delegates as needed to permit review. *See Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420–21, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (holding that "since the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary ... to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard"), *overruled on unrelated grounds by Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Communications setting forth and evaluating alternatives to the Orders must also be included.

Should the EPA opt to submit the administrative record rather than to pursue an enforcement action or to withdraw its

---

1. An enforcement action in the appropriate United States District Court in our view may provide a preferable means of resolving the issues in this case, for the parties in that context will be able to develop a full record on pertinent issues.

Orders, petitioners and respondents are ordered to file, within 21 days of such submission, supplemental briefs, not to exceed 15 pages, assessing the impact, if any, of *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001), on the question whether it is the EPA or ADEC which has the ultimate authority to make BACT determinations.

The parties shall provide notice of the status of these proceedings to this Court within 60 days hereof. Submission of this matter is hereby vacated until further notice by this Court.

IT IS SO ORDERED.