Even if the Court accepts USCIS's characterization of its guidance as a "clarification" with no substantive effect, "an agency's duty to explain cogently the bases of its decisions is not limited to circumstances in which the agency departs directly from an earlier path." Humane Soc'y , 626 F.3d at 1050-51. USCIS's inconsistent treatment of SIJ petitions with similar factual backgrounds (i.e. , SIJ findings from California probate courts) requires an explanation. Id.
Accordingly, the Court finds that Plaintiffs have shown a likelihood of success on the merits with regards to their claim that USCIS failed to provide a reasoned explanation.
c. Whether USCIS Was Required to Provide Adequate Notice
Finally, Plaintiffs contend that USCIS was required to follow the APA's procedural requirements. See Dkt. No. 6 at 16. USCIS argues that it was not required to follow the APA's notice and comment procedures because its new policy is not a substantive rule. Rather, the new policy is an interpretive rule that preserves USCIS officers' ability to make individualized determinations. See Dkt. No. 34 at 15-16.
The APA requires a federal agency to follow prescribed notice and comment procedures before promulgating substantive rules. See 5 U.S.C. § 553. Those procedures do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." Id. § 553(b)(A).
In Colwell v. Department of Health and Human Services , 558 F.3d 1112, 1124 (9th Cir. 2009), the Ninth Circuit distinguished a substantive rule from a general statement of policy:
The critical factor to determine whether a directive announcing a new policy constitutes a rule or a general statement of policy is "the extent to which the challenged *1065 [directive] leaves the agency, or its implementing official free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case ....
To the extent that the directive merely provides guidance to agency officials in exercising their discretionary power while preserving their flexibility and their opportunity to make "individualized determination[s]," it constitutes a general statement of policy .... In contrast, to the extent that the directive "narrowly limits administrative discretion" or establishes a "binding norm" that "so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion," it effectively replaces agency discretion with a new "binding rule of substantial law."
Colwell , 558 F.3d at 1124 (quoting Mada-Luna v. Fitzpatrick , 813 F.2d 1006, 1013-14 (9th Cir. 1987) ) (alterations in original).
Here, some of the language used in the CHAP is couched in terms that appear to suggest that the policy is not mandatory and preserves USCIS officers' discretion. See, e.g. , CHAP at 7 ("it may be appropriate to deny [the petition] on the basis that the evidence does not establish eligibility ....") (emphasis added); id. ("USCIS may ask the petitioner to provide evidence that the court had competent jurisdiction ..."); id. ("the officer should request that the applicant provide evidence that the court relied on the relevant state law to make the findings. This requirement can be met if the petitioner submits supplemental evidence ....").
However, the CHAP also contains language that effectively nullifies the discretionary language quoted above. For example, the CHAP states that petitioners can submit supplemental evidence such as "a copy of the petition with state law citations, excerpts from relevant state statutes considered by the state court prior to issuing the order" and "evidence [showing] that the court actually relied on those laws when making its findings." CHAP at 7-8. But the CHAP also states that:
California civil procedures were updated to provide jurisdiction to all Superior courts in California to make "the factual findings" required by 8 USC 1101(a)(27)(J)(i). See CA Civ. Pro. Section 155. However, USCIS views the required findings as legal conclusions on matters of child welfare that must be made by courts of competent jurisdiction. The change in California law does not appear to provide the courts with the power and legal authority to make decisions about a parent's ability to have custody of an individual over 18.
Id. The two statements are incongruous. USCIS's internal guidance instructs its officers to request evidence in the form of citations to relevant California law, while simultaneously declaring that law insufficient. This directive "so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion," i.e. , whether the petition is from California. Mada-Luna , 813 F.2d at 1014 (internal citations and quotations omitted).
USCIS's actions reinforce the conclusion that its new policy is a mandatory substantive rule. In support of her SIJ petition, J.L. submitted a juvenile court order with SIJ findings from the California Superior Court for the County of Los Angeles. See Dkt. No. 17, Ex. E at 70. In that order, the Superior Court stated that "[t]his Court is a juvenile court with authority to make decisions about the care and custody of minors. See Cal. Code Civ. Pro. § 155(a)(1)...." Id. at 72. The Superior Court also stated that it "has the authority to determine that reunification with [J.L.'s] parents is not viable ...." Id. at 73 (citing *1066 Cal. Prob. Code §§ 1510.1, 2351 ). These statements are precisely the type of evidence the CHAP instructs USCIS officers to request, but USCIS nevertheless rejected J.L.'s petition for lack of evidence. See Dkt. No. 17, Ex. C at 21-22.
Accordingly, the Court finds that Plaintiffs have shown a likelihood of success on their claim that USCIS was required and failed to follow the notice and comment procedures of the APA.
2. Final Agency Action
Despite the foregoing reasons, USCIS argues that Plaintiffs nonetheless fail to show a likelihood of success or raise serious questions on the merits because three of the four named plaintiffs do not have judicially reviewable "final agency actions."
Judicial review of agency actions is allowed "so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in court.' " W. Radio Serv. Co. v. U.S. Forest Serv. , 578 F.3d 1116, 1122 (9th Cir. 2009) (quoting Webster v. Doe , 486 U.S. 592, 599, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) ); see also 5 U.S.C. § 704.
An agency action is final if (1) it "marks the consummation of the agency's decision-making process-it must not be of a merely tentative or interlocutory nature" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear , 520 U.S. 154, 177-78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal citations and quotations omitted). Finality requires that the action be the agency's "last word on the matter." Whitman v. Am. Trucking Ass'ns , 531 U.S. 457, 478, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). "[T]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Indus. Customers of NW. Utils. v. Bonneville Power Admin. , 408 F.3d 638, 646 (9th Cir. 2005) (quoting Franklin v. Massachusetts , 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) ). Factors such as "whether the [action] amounts to a definitive statement of the agency's position, whether the [action] has a direct and immediate effect on the day-to-day operations of the party seeking review, and whether immediate compliance [with the terms] is expected" provide "an indicia of finality." Id. (quoting Cal. Dep't of Water Res. v. FERC , 341 F.3d 906, 909 (9th Cir. 2003) ) (alterations in original). The Ninth Circuit approaches the finality requirement "in a pragmatic and flexible manner." Havasupai Tribe v. Provencio , 876 F.3d 1242, 1250 (9th Cir. 2017) (internal quotations omitted).
Here, USCIS attempts to characterize the relevant agency action as its denials (or, in the case of M.V.B., M.D.G.B., and J.B.A., its non-denials) of SIJ status. USCIS argues that because it has not issued final decisions on M.V.B., M.D.G.B., and J.B.A.'s SIJ petitions, Plaintiffs' motion should be denied as to those plaintiffs for lack of a judicially reviewable final action. See Dkt. No. 34 at 13. As to J.L.'s claims, USCIS argues that the REAL ID Act of 2005, 8 U.S.C. § 1252(g), bars judicial review because its denial of SIJ status is an enforcement action relating to J.L.'s removal. See id. at 20.
USCIS's arguments are not persuasive. Plaintiffs' lawsuit is not directly concerned with USCIS's specific denials of their SIJ petitions. Rather, the instant action seeks to curb USCIS's adoption of a dubious legal theory to justify a blanket policy of denying SIJ petitions for immigrant juveniles between the ages of 18-20. Specifically, Plaintiffs challenge USCIS's requirement that SIJ findings must be made by a state juvenile court with the power to actually *1067 reunify petitioners with their biological parents. Although USCIS's adoption of this legal theory may result in denials of SIJ status for specific SIJ petitions, it is USCIS's adoption of that theory, not the specific SIJ adjudications that may follow, that is at issue in this case.
Under the Bennett test, USCIS's new policy is a reviewable final agency action. First, USCIS's new policy was the "consummation of the agency's decision-making process." Bennett , 520 U.S. at 178, 117 S.Ct. 1154. In its statement to Politico, USCIS represented that "[b]y late summer 2017, the USCIS [National Benefits Center ("NBC") ] asked for legal guidance that affected pending cases filed by individuals over 18 ... while the NBC sought legal clarification from the USCIS Office of Chief Counsel." See Politico Statement. Then, USCIS "began to review ... pending cases" to reflect that guidance. Id.
Rosenstock's declaration provides a similar and more detailed account of USCIS's decision-making process. In October 26, 2016, USCIS issued "new chapters" in its policy manual guidance regarding SIJ classification. Rosenstock Decl. ¶ 9. The guidance clarified that "a valid juvenile court order requires the state to have jurisdiction over the petitioner's care and custody under state law." Id. USCIS then requested additional guidance regarding state court jurisdiction under the SIJ statute and USCIS "paused adjudication of such cases pending that guidance." Id. ¶ 10. In February 2018, the OCC specifically instructed USCIS that "[t]he evidence submitted must establish that the court had the power and authority to make required determination about the care an [sic] custody of the petitioner, which includes parental reunification, as a juvenile." Id. ¶ 11. Following this instruction, USCIS revised its CHAP to implement those policies. Id. USCIS's revision of the CHAP and its implementation of its new policy marks the "consummation of the agency's decision-making process." Bennett , 520 U.S. at 178, 117 S.Ct. 1154.
A recent Ninth Circuit decision reinforces this conclusion. In Navajo Nation v. United States Dept. of Interior , 819 F.3d 1084, 1089 (9th Cir. 2016), the National Park Service concluded that federal law applied to assorted Native American remains and archaeological items and started an inventory process to provide for the ultimate disposition of those items. The Ninth Circuit held that "[the Park Service's] legal determination that [federal law] appl[ied] to the remains and objects ... marked the consummation of the agency's decisionmaking process as to that issue." Id. at 1091 (internal quotation marks omitted). Critical to the Ninth Circuit's decision was the fact that the underlying dispute concerned not whether specific items belonged to the plaintiffs, but whether the Park Service was correct in applying federal law at all. Id. at 1092.
Similarly, in Alaska v. United States E.P.A. , 244 F.3d 748 (9th Cir. 2001) the Ninth Circuit held that three enforcement orders entered by the EPA were final agency actions. The Ninth Circuit found irrelevant that the EPA had not actually commenced enforcement actions against the plaintiffs. Id. at 750. It was sufficient that the EPA's orders were its "final position on the factual circumstances upon which the Orders were predicated" and that the plaintiff was "in legal jeopardy if it fails to comply with the Orders." Id. The court also found dispositive that "[t]he EPA's position [was] unalterable; according to [the EPA's] counsel, it would only change if the circumstances ... change." Id.
In this case, USCIS made a legal determination that SIJ petitioners must produce evidence that the state court providing SIJ findings had the power to compel *1068 family reunification. USCIS has acted pursuant to that guidance by revising the CHAP and denying SIJ petitions pursuant to the new guidance. USCIS's internal publication marks the consummation of the USCIS's decision-making process. It is clear from USCIS's conduct that there "would be no further agency decisionmaking" regarding their interpretation of the SIJ statute and the first Bennett requirement is satisfied. Navajo Nation , 819 F.3d at 1091 (internal quotation marks and alterations omitted).
The second Bennett requirement is also met because "legal consequences will flow" from USCIS's adoption of the OCC's new legal theory. Bennett , 520 U.S. at 178, 117 S.Ct. 1154. Specifically, USCIS's policy will result in denials of SIJ status. Indeed, at least one Plaintiff-J.L.-had her SIJ petition denied, while other Plaintiffs-M.D.G.B. and J.B.A.-have been issued NOIDs based on the new policy. USCIS's new policy has "a virtually determinative effect" on Plaintiffs' SIJ petitions. Id. at 169, 117 S.Ct. 1154 ; see also Columbia Riverkeeper v. U.S. Coast Guard , 761 F.3d 1084, 1095 (9th Cir. 2014) (Coast Guard's letter of recommendation approving a proposed site of a natural gas facility was not a final agency action because the Federal Energy Regulatory Commission does not always follow its recommendation). USCIS makes no serious argument to the contrary.
USCIS's relies on Reiter v. Cooper , 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) and Cabaccang v. USCIS , 627 F.3d 1313, 1316 (9th Cir. 2010) for support. These cases are inapposite. In Cabaccang , the Ninth Circuit held that the pendency of the plaintiffs' immigration proceedings and the fact that those proceedings could be appealed to an ALJ rendered the agency's decision non-final. 627 F.3d at 1316 (citing Reiter , 507 U.S. at 269, 113 S.Ct. 1213 ). Here, however, Plaintiffs are not challenging USCIS's application of their new policy requiring SIJ petitioners to provide evidence that the state court making SIJ findings could reunify them with their biological parents. Plaintiffs are challenging the policy itself.
In sum, USCIS's adoption of the OCC's new interpretation of the SIJ statute constitutes final agency action that is appropriate for judicial review. Because Plaintiffs have demonstrated that they are likely to succeed on their APA claim in general, the first Winter factor weighs heavily in favor of granting the preliminary injunction.[11]
B. Irreparable Harm
"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." Ariz. Dream Act Coalition v. Brewer (Ariz. I) , 757 F.3d 1053, 1068 (9th Cir. 2014). Here, Plaintiffs have demonstrated that they will suffer irreparable harm absent a preliminary injunction.
If USCIS is permitted to continue to rely on its interpretation of the SIJ statute, Plaintiffs suffer irreparable harm by losing eligibility for SIJ status and all attendant benefits. For example, SIJ designees are exempt from a variety of grounds for removal, such as "being found to be a 'public charge,' lacking a 'valid entry document,' or having 'misrepresented a material fact'-while seeking admission into the United States." Osorio-Martinez v. Attorney General U.S.A. , 893 F.3d 153, 171 (3d Cir. 2018) (citing 8 U.S.C. §§ 1182(a), 1255(h)(2)(A) ). SIJ designees are also granted access to federally-funded education and preferential status for employment-based *1069 green cards. Id. (citing 8 U.S.C. §§ 1232(d)(4)(A), 1153(b) ). The loss of these benefits by itself constitutes irreparable harm.
In addition, the Ninth Circuit has recognized that losing professional opportunities constitutes irreparable harm. Ariz. I , 757 F.3d at 1068 (citing Enyart v. Nat'l Conference of Bar Exam'r, Inc. , 630 F.3d 1153, 1165 (9th Cir. 2011) ). In Ariz. I , the Ninth Circuit held that the denial of driver's licenses to a class of immigrant children caused irreparable harm by severely limiting their professional opportunities. Id. Here, Plaintiffs assert, and USCIS does not dispute, that most of them will be unable to obtain green cards without SIJ status. See Dkt. No. 6 at 21. Without green cards, Plaintiffs' professional opportunities are not just limited, they are virtually eliminated.
USCIS argues that Plaintiffs will not be injured absent a preliminary injunction because their inability to obtain work authorization and lack of SIJ status is merely "a continuation of their status quo as aliens without legal status ...." Dkt. No. 34 at 22. This argument is not persuasive. The relevant injury is not Plaintiffs' current inability to work; it is the lost eligibility for SIJ status and their continued inability to obtain work authorization that follows as a result. Put differently, if USCIS is enjoined from implementing their purportedly unlawful policy, Plaintiffs can use California juvenile court orders to obtain SIJ status and enjoy its associated benefits. Absent a preliminary injunction, Plaintiffs will lose that opportunity and it is that lost opportunity which constitutes their irreparable injury. Cf. Ariz. I , 757 F.3d at 1068 (inability to obtain driver's licenses was an irreparable harm even though plaintiffs did not already have driver's licenses).
Plaintiffs are also likely to suffer irreparable harm in the form of removal proceedings. USCIS does not dispute that being deported constitutes irreparable harm under Winter . Rather, USCIS argues that such harm is too speculative. The Court disagrees.
On January 25, 2017, the President issued an Executive Order directing federal agencies "to employ all lawful means to ensure the faithful execution of the immigration laws of the United States against all removable aliens." Executive Order 13768, 82 Fed. Reg. 8799 (Jan. 25, 2017). In response, the Department of Homeland Security issued a "Policy Memorandum" providing that "USCIS will issue an [Notice to Appear] where, upon issuance of an unfavorable decision on an application, petition, or benefit request, the alien is not lawfully present in the United States." See Dkt. No. 7-6, Ex. E ("DHS Memo") at 154. Although these documents do not demonstrate that removal is certain, they suggest that removal is at least likely to occur. The cases cited by USCIS to the contrary are unpersuasive because they were decided under different administrations with different enforcement priorities. See, e.g. , Carlsson v. U.S.C.I.S. , No. CV-12-7893-CAS, 2012 WL 4758118, at *9 (C.D. Cal. Oct. 3, 2012) (finding that the risk of deportation was unlikely on record before the court). In any case, at least one of the Plaintiffs, M.V.B., is currently in removal proceedings.[12]
*1070 Thus, the Court finds that Plaintiffs have shown that they are likely to suffer irreparable harm in the absence of a preliminary injunction. The second Winter factor weighs in favor of granting an injunction.
C. Balance of Hardships and the Public Interest
The balance of hardships and public interest factor merge when the government is the opposing party. Nken v. Holder , 556 U.S. 418, 435, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). These factors weigh in favor of a preliminary injunction when plaintiffs have also established that the government's policy violates federal law. Ariz. I , 757 F.3d at 1069 ; see also Valle del Sol, Inc. v. Whiting , 732 F.3d 1006, 1029 (9th Cir. 2013) ("it is clear that it would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law, especially when there are no adequate remedies available.").
Because Plaintiffs have satisfied the first and second Winter factors, the balance of hardship and public interest factors are also met. Because all four Winter factors weigh in favor of granting a preliminary injunction, the Court GRANTS Plaintiffs' motion for preliminary injunction.
D. Bond and the Scope of Relief
Federal Rule of Civil Procedure 65(c) permits preliminary injunctions "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Despite the mandatory language, " Rule 65(c) invests the district court with discretion as to the amount of security required, if any." Johnson v. Couturier , 572 F.3d 1067, 1086 (9th Cir. 2009). A court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Id. (internal citation and quotations omitted). Here, USCIS did not request a bond and there is no likelihood of harm justifying a bond.
Preliminary injunctive relief is generally "limited to apply only to named plaintiffs where there is no class certification" unless extending injunctive relief to an absent class is necessary "to give prevailing parties the relief to which they are entitled." Easyriders Freedom F.I.G.H.T. v. Hannigan , 92 F.3d 1486, 1501-02 (9th Cir. 1996) (internal citations, quotations, and emphasis omitted).
Although a class has not yet been certified, California-wide preliminary injunctive relief is necessary to preserve the status quo and to prevent irreparable harm for all Plaintiffs and the putative class. See Price v. City of Stockton , 390 F.3d 1105, 1117-18 (9th Cir. 2004) (approving broad preliminary injunctive relief to "all displaced persons" not merely named plaintiffs); see also Just Film, Inc. v. Merchant Servs., Inc. , 474 Fed. Appx. 493, 495 (9th Cir. 2012) (class-wide preliminary injunction appropriate even when district court has not certified a class). This relief may be narrowed in the event Plaintiffs are unable to justify certification of a class. Accordingly, the Court ORDERS Plaintiffs to move for class certification within 28 days of this Order. The Court will expedite ruling on class certification.
IV. Conclusion
Plaintiffs' motion for preliminary injunction is GRANTED. During the pendency of this action:
1. It is hereby ORDERED that Director Lee Francis Cissna, Secretary Kirstjen M. Nielsen, Director Robert Cowan, the United States Department of Homeland Security, and the United States Citizenship *1071 and Immigration Services, their officers, agents, employees, representatives, and all persons acting in concert or participating with them are ENJOINED AND RESTRAINED;
2. From denying Special Immigrant Juvenile Status pursuant to 8 U.S.C. § 1101(a)(27)(J) on the ground that a California Probate Court does not have jurisdiction or authority to "reunify" an 18- to 20-year-old immigrant with his or her parents;
3. From initiating removal proceedings against or removing any Special Immigrant Juvenile Status petitioner who was appointed a guardian pursuant to § 1510.1(a) of the California Probate Code and whose Special Immigrant Juvenile Status petition has been denied on the grounds that the California Probate Court did not have jurisdiction or authority to "reunify" an 18- to 20-year-old immigrant with his or her parents; and
4. To provide no less than 14 days notice to Plaintiffs' counsel before Defendants take any adverse adjudicatory or enforcement action against any of the individual Plaintiffs or members of the Proposed Class.
Within 28 days of this Order, Plaintiffs must move for class certification pursuant to Federal Rule of Civil Procedure 23.
Within 14 days of this Order, Defendants must serve and file a declaration verifying that they have complied with this Order and detailing what steps, if any, they have taken to do so. The parties also must meet and confer within 14 days from the date of this Order and file an initial Rule 26(f) Report and Case Management Statement.
IT IS SO ORDERED.

Because the Court concludes that Plaintiffs are likely to succeed on their APA claim, it declines to address the viability of their Due Process claims at this time.

Plaintiffs also claim that a member of their proposed class, J.A.L., was placed in removal proceedings after being denied SIJ status. See Dkt. No. 6 at 22. To substantiate their claim, Plaintiffs attached a declaration by J.A.L.'s attorney with redacted documentation. See Dkt. No. 17-4. Because USCIS does not know J.A.L.'s identity, it is unable to verify Plaintiffs' claims. In the interest of fairness, the Court will not rely on Plaintiffs' claims regarding J.A.L. at this time.